RUFUS HISEY, Respondent, v. CITY OF MEXICO, Appellant.

St. Louis Court of Appeals, February 26, 1895.

1. **Abatement of Nuisance**: CONCLUSIVENESS OF DECISION OF MUNICIPAL AUTHORITIES. If municipal authorities, in the exercise of a power of abatement in the municipality, declare that to be a nuisance which is not one *per se*, their decision is not conclusive.

2. ———: AWNINGS ON STREETS. An awning on a sidewalk in a city, while an encroachment on the sidewalk, is not necessarily an illegal encroachment.

3. ———: ———: POWERS OF CITY OF THIRD CLASS. Accordingly, a city of the third class, which has, under the Revised Statutes, power to remove nuisances, to prohibit and prevent encroachments on streets and sidewalks, and to regulate the erection of awnings, has not the right to remove an awning over a sidewalk which is a safe structure, and does not materially interfere with the free use and enjoyment of the sidewalk by the public.

*Appeal from the Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

DECREE MODIFIED.

*S. W. Bickley* and *W. H. Kennan* for appellants.

*Geo. Robertson* for respondent.

BIGGS, J.—Plaintiff is the owner of what is known as the Ringo Hotel building in the city of Mexico. The building is a three story structure, fronting one hundred and fourteen feet on Jefferson street. The first, or ground floor, is divided into store rooms and business offices, and the other stories are arranged for a hotel. Along Jefferson street, and in front of the building, there is a wooden veranda or awning extending over the sidewalk and about twelve feet above it,

which is supported by posts resting on stone pillars near the edge of the gutter, and by cross timbers inserted into the walls. During pleasant weather the veranda is used by the guests of the hotel, and it is, as the evidence shows, a valuable adjunct to that portion of the building which is used for hotel purposes.

The building was built in 1866, and at that time a balcony was constructed in front of it along Jefferson street. The balcony was removed in 1873 or 1874, and the veranda put in its place. This condition continued without objection or complaint by any one until July 10, 1893, when the city council by *resolution* instructed the street commissioner to take down all awnings, porches, verandas, etc., on Jefferson street, north of Promenade street. The plaintiff's building was within those limits. In pursuance of the resolution, the defendant, through its agent, attempted to remove the plaintiff's awning, and, to prevent it from being done, the plaintiff instituted this action in the circuit court and obtained a temporary restraining order. On the final hearing the injunction was made perpetual, and the defendant has appealed.

The defendant first became incorporated by special charter enacted in 1857 (Sess. Acts 1856-7, p. 214). Afterward the original charter was revised and amended by an act of the legislature passed in 1874. (Sess. Acts, 1874, p. 341.) In 1892 it became a city of the third class. (Sess. Acts, 1893, p. 65.)

Under section 88 of the statute (Sess. Acts, 1893, p. 83) the power is conferred on cities of the third class to pass *ordinances* "for the removal of nuisances." The preceding section provides that such cities shall have power to prohibit and prevent all encroachments into and upon the sidewalks, streets, avenues, alleys, and other public places of the city, and may provide for the removal of all obstructions from the sidewalks,

curbstones, gutters," etc. The section also contains this clause, to wit: "The council may also *regulate* the planting of shade trees, *erecting awnings*, hitching posts, lamp posts, awning posts, telephone, telegraph and electric light poles, and the making of excavations through and under the sidewalks or in any public street, avenue, alley or other public place within the city."

In execution of the power and duty imposed by section 88, *supra*, the city council on the third day of July, 1893, passed the following ordinance, to wit: "It is hereby declared to be a nuisance for any person within the city to erect, place or maintain any obstruction or structure of any kind in, on, across or upon any sidewalk, street or gutter; or to suffer any such obstruction or structure by him so placed or erected to remain in, on, across or upon any sidewalk, street or gutter in front of his or her premises; or to place any sweepings, garbage, filth, straw, dirt, chips, shavings, paper, ashes or other rubbish in or upon any sidewalk, street, gutter, alley or sewer within this city."

On the same day the following ordinance was also passed: "The city council may, by *resolution*, direct and order the prevention, abatement and removal of any and all nuisances in a summary manner at the cost of the occupant or owner of the premises causing, erecting or maintaining any such nuisance, or where the nuisance or cause thereof may be, whenever the same shall be caused, erected or maintained by the occupant or owner of such premises, or his agent; and all costs and expenses incurred by the city in removing or abating any such nuisance within the city, erected, caused or maintained as aforesaid, may be assessed against such occupant or owner, if caused by them, or either of them, or their agent. In case such nuisance shall be erected, caused or maintained by any such

property owner, the cost of erecting or removing the same shall be assessed by the council as a special tax bill against such private property, in the name of the owner thereof, which shall be a special lien against such property, in the same manner and with the same effect that special tax bills are assessed and issued for street paving; or, the cost of removing and abating such nuisance may be made a part of the judgment by the police judge, in addition to the fine imposed, in case of conviction in the police court of the person causing or maintaining such nuisance."

In pursuance of the foregoing ordinances the city council, on the tenth day of July, 1893, adopted the following resolution, under which the agents of the defendant were attempting to remove the plaintiff's awning, to wit: "Resolved, that the street commissioner proceed at 7 o'clock A. M. on Tuesday, July 11, beginning at corner of Promenade and Jefferson streets and going north on Jefferson street, to take down all awnings, porches, verandas, sheds, bridges, cross signs, sign posts, wooden stiles, and all other obstructions upon, over or across, any sidewalk, street or alley in the city of Mexico, in accordance with an ordinance regulating the same; and that he be further instructed to keep an account of the cost of taking down each of the above obstructions, and charge same to the property owners who are maintaining said obstructions."

It is urged by counsel for the defendant that plaintiff's awning is an illegal encroachment on the public street, and that it became the duty of the defendant to have it removed, and that, however irregularly it may have proceeded in the performance of such duty, the plaintiff can not invoke the equitable interference of the court. *Heitz v. City of St. Louis*, 110 Mo. 618. That the awning is an encroachment on the street can not be questioned, but that it is necessarily an *illegal* encroach-

ment we deny. The state has general control over all streets and highways, and it may lawfully restrain or *enlarge* their ordinary uses. This principle is universally recognized, and the power is exercised in many ways. The state may authorize the laying of a steam railway track along the public streets of a city, or the erection of telephone or telegraph poles thereon, or the bridging of a navigable stream, or the construction of awnings over sidewalks, or covered areas below the street; and it is not for the courts to say that such structures are illegal, for the state may for the convenience of business authorize them. Elliott on Roads and Streets, p. 484; *Hoey v. Gilroy*, 129 N. Y. 132; Cooley on Torts [2 Ed.] sec. 615; 2 Dillon on Municipal Corporations [4 Ed.] sec. 657.

Now, under section 87, *supra*, it is made the duty of the city council to prevent and remove all obstructions or encroachments upon the streets or sidewalks, but the same section provides that the city council may *regulate awnings, awning posts*, hitching posts, lamp posts, telephone, telegraph and electric light poles, thereby enacting in substance that awning posts are not necessarily illegal obstructions. In the case of *Hoey v. Gilroy, supra*, the New York court of appeals had under consideration a statute almost identical in its terms. The court, speaking through O'BRIEN, J., said: "It can not be doubted that the power to *regulate* awnings carried with it the power to authorize their erection and maintenance upon compliance with the rules adopted upon that subject. It is just as clear that the legislature intended to authorize the common council to permit the construction of awnings, as it is that it intended to prohibit them from permitting encroachments upon or obstructions in the streets. An awning was an obstruction that was intended to be excepted from the general prohibitive words, or perhaps it would

be better to say that the legislature did not intend that the general words should cover that particular case." Therefore, we think it quite clear that the plaintiff's awning is not *ipso facto* an illegal structure, and it is not subject to abatement by defendant merely because it is an encroachment on the street.

Neither do we think that the right of the defendant to tear it away can be justified under the general power of the city to declare and abate nuisances. It is only when the structure is a nuisance *per se*, that the decision of the municipal authorities as to its character is conclusive. *City of St. Louis v. Stern*, 3 Mo. App. 48; *City of St. Louis v. Schnuckelberg*, 7 Mo. App. 536. In any other case the owner may successfully contest the right of abatement by showing that the matter complained of is not a nuisance in fact. This the plaintiff did in the present case. His evidence was abundant, and uncontradicted, that the veranda in nowise interfered with the free use of the streets, and that it is securely built. In fact, there is no pretense that it obstructs travel or that it is a dangerous structure.

The plaintiff's evidence also tended to prove (without contradiction) that verandas and awnings have existed in the city since its incorporation, and that the municipal authorities have in many ways recognized them as legal structures. Hence, if the case be viewed from either standpoint, the decree of the circuit court must be upheld.

Our conclusion is that, as against the city, the plaintiff may maintain his awning so long as it is a safe structure, and it does not materially interfere with the free use of the streets. The defendant may in the future regulate it, but we do not think that it can be abolished merely because it encroaches on the street.

But the decree of the circuit court is too broad. It absolutely enjoins the defendant from interfering in

any manner or under any circumstances with the awning. This, as our opinion shows, was unauthorized. The awning may become dangerous, or it may prove to be an actual obstruction or hindrance to the use of the streets. To remedy this, however, the cause need not be remanded. The decree will be modified so as to read as follows, to wit: It is ordered that the defendant, its officers, agents and servants, be injoined from interfering with, or removing the plaintiff's awning, so long as it is maintained as a safe structure and it does not materially interfere with the free use and enjoyment of the streets by others. All the judges concur.