Argued May 31, reversed and dismissed June 28, 1921, rehearing denied January 10, objections to costs sustained January 10, 1922.

## CITY OF PORTLAND *v.* YATES.

(199 Pac. 184; 203 Pac. 319.)

**Municipal Corporations — Have Authority to Remove or Regulate Obstructions in Streets.**

1. A city has ample authority to remove from the streets and thoroughfares every obstruction or impediment to their free use as such by the public, unless legalized by authority of law, and the power to remove includes the power to prevent by such reasonable regulations as do not conflict with any of the provisions of the federal or state Constitutions, charters, or general laws.

**Municipal Corporations — Cities may Restrain Erections Over Traveled Street.**

2. Ordinances and by-laws, intended to accomplish the purpose of securing a free and uninterrupted passage through streets situated in a populous neighborhood, by restraining and regulating erections over a portion of the traveled way, are clearly within the legitimate scope of the power confined to cities and towns.

**Municipal Corporations—Enforcement of Ordinance as to Size, etc., Against Existing Electric Signs, Held Unlawful.**

3. Where an electric sign was constructed over a street under a permit from the city, it was an unreasonable encroachment on private contractual rights to enforce a subsequent ordinance, prescribing the size and specifications for signs over streets different than those required by ordinance under which the sign was constructed, where the sign in question was securely hung, caused no

---

2. Power of municipality to prevent or regulate use of property for advertising purposes, see note in 132 Am. St. Rep. 92,

inconvenience to the public, and did not interfere with the personal property rights of any person.

**Municipal Corporations—Courts Should Construe Ordinance so as to Prevent Wrongful Destruction of Property.**

4. Every intendment should be made in favor of the validity of a municipal law, passed to promote the public welfare, and yet, when it is shown that there is no reasonable basis for the adoption of the amendatory ordinance, and that the enforcement of the ordinance in the manner attempted in the particular case will be in effect a deprivation of property unnecessarily and illegally, the court should so construe the enactment as to prevent a wrongful destruction of property, although the ordinance should be upheld and enforced as far as it is reasonable.

### ON PETITION FOR REHEARING.

**Municipal Corporations—Burden upon Defendant to Show Ordinance Unreasonable.**

5. In a prosecution by a city for violation of an ordinance, in that defendant was maintaining a sign constructed under a former ordinance but which did not comply with requirements of the new ordinance, the burden of showing facts which would demonstrate that the later ordinance was unreasonable as it affected defendant's sign was upon the defendant.

**Municipal Corporations — Public's Right in Street Paramount to Right of Abutting Owner to Maintain Sign Under Previous Permit.**

6. The public's right in a street is paramount, and the abutter's right to proper use of the street in front of his property is subject to reasonable municipal and police regulations, and a city may cause the removal of a sign properly constructed under a permit issued in pursuance of an ordinance, where, under changed conditions, it interferes with the use of the street or sidewalk.

### ON MOTION TO RETAX COSTS.

**Municipal Corporations—City not Liable for Costs to Defendant Acquitted in Prosecution for Violation of Ordinance.**

7. There is no statutory or city law making the city of Portland liable to a judgment for the payment of costs where it fails in a prosecution for a violation of an ordinance, and, in the absence of such a law, no judgment can be rendered for costs in a criminal or *quasi*-criminal action when the defendant is acquitted, and prosecutions under penal ordinances are *quasi*-criminal actions.

From Multnomah: ROBERT TUCKER, Judge.

Department 2.

The defendant Paul C. Yates, about November 29, 1916, procured from the proper authorities of the

City of Portland a permit to erect an electric sign at 125½ Sixth Street in that city, paying a small consideration for the permit. Pursuant to the permit defendant had the sign hung, and in all respects complied with the then existing city ordinances. After the sign had been erected it was inspected and accepted by the city engineer's office on behalf of the City of Portland. It is admitted that the sign is now securely suspended, and does not in any way interfere with the traffic, or pedestrians on Sixth Street, or on the sidewalk. It in no way interferes with the personal, or property rights of any citizen.

About July 3, 1918, the common council of the City of Portland amended the ordinances relating to the maintenance of electric signs in the city in such a manner that the sign erected and maintained by the defendant is not within the requirements of the present sign ordinance. On May 1, 1920, defendant was arrested on the charge of maintaining an electric sign without a permit therefor. He was tried before the municipal judge, and found guilty and fined $40. From this conviction defendant appealed to the Circuit Court for Multnomah County, where the judgment of the Municipal Court was affirmed. The defendant appeals to this court.

REVERSED AND REMANDED.

For appellant there was a brief and oral argument by *Mr. Wilbur Henderson.*

For respondent there was a brief over the names of *Mr. W. P. La Roche* and *Mr. E. Y. Lansing,* with an oral argument by *Mr. Frank S. Grant.*

BEAN, J.—It is contended on behalf of defendant in effect that the sign in question was erected under

a permit from the city at considerable expense with the implied understanding that it could be maintained during its natural life; that the defendant and the city thereby assumed contractual relations; and that the sign not being detrimental to the city, or any of its people, should not be condemned without compensation therefor. It is shown on behalf of defendant: First, that the sign was erected under an express permit from the city authorities; second, there was no reservation or limitation as to time of the license granted; third, the cost of the sign was of a substantial amount; fourth, the ordinary life of the sign was approximately twenty years; fifth, the sign was securely hung and was in no way an object of inconvenience to the public, and in no way interfered with the personal or property rights of any person, or the welfare of the people.

It is submitted on behalf of the city as follows: The sign was constructed under the provisions of Ordinance No. 30,332. On July 3, 1918, the common council enacted Ordinance No. 34,278, providing for a full and complete regulation of the installation, erection and maintenance of signs in and over the streets of the city, setting out the ordinance in full. Subdivisions 61 and 62, Section 64, of the charter of the City of Portland confer upon the council the power to regulate, restrict and prevent obstructions in the public streets and on the sidewalks; and to regulate the use of the streets and sidewalks for the use of signs: Laws of Oregon 1903, p. 3, and acts amendatory thereof. A mere license to use a street is revocable by a municipality in the exercise of its legislative discretion. Pursuant to this rule it is proper to revoke licenses to use sidewalks, to maintain awnings

or other obstructions: 28 Cyc. 890. The city further submits that, to forbid the use of property for purposes detrimental to the public welfare is not a taking of property within the meaning of the fourteenth amendment to the federal Constitution, citing: Freund's Police Power, §§ 513, 516; *Mugler* v. *Kansas,* 123 U. S. 623 (31 L. Ed. 205, 8 Sup. Ct. Rep. 273, see, also, Rose's U. S. Notes); *Powell* v. *Pennsylvania,* 127 U. S. 678 (32 L. Ed. 253, 8 Sup. Ct. Rep. 992, 1257); *State* v. *Griffin,* 69 N. H. 1 (39 Atl. 262, 76 Am. St. Rep. 139, 41 L. R. A. 177, 179, 181); 27 Harvard Law Review, 665. Counsel for city state in their brief:

"The sign is used by the appellant in advertising his private business. The permit is in no sense a franchise. The sign is not used for a public purpose. No citizen has a right to use the streets or the sidewalks for the promotion of his private business to the exclusion of future public regulation. His use for private purposes may be prohibited, or regulated, as the municipality may deem best for the good of the public. The council of a municipality may permit the use of private signs on sidewalks, or permit signs to be erected, which project out and over the sidewalk, to-day, and yet, in a year from now, experience may demonstrate that such regulations are entirely improper and change such regulations to the extent of even requiring all signs that project over the sidewalk to be removed."

1, 2. It is beyond controversy that a city has ample authority to remove from the streets and thoroughfares, every obstruction or impediment to their free use as such by the public, unless legalized by the authority of law. The power to remove includes the power to prevent by such reasonable regulations as do not conflict with any of the provisions of the federal

or state Constitutions, charters, or general laws: McQuillin on Municipal Ordinances, § 460; *Philadelphia* v. *Philadelphia & R. R. R. Co.,* 58 Pa. St. 253, 263. Ordinances and by-laws intended to accomplish the purpose of securing a free and uninterrupted passage through streets situated in a populous neighborhood, by restraining and regulating erections over a portion of the traveled way, are clearly within the legitimate scope of the power confided to cities and towns: McQuillin on Ordinances, § 461.

As suggested in the brief of counsel for the city, which we here quote, in a year it may be demonstrated by experience that such regulations are "entirely improper."

"It has been held," as stated in 3 McQuillin on Municipal Corporations, Section 1319, "that if the municipality has a right to grant permission to use a street for a certain purpose, and it does so, it cannot revoke the license *without good cause or granting compensation therefor.* But in order to make a license irrevocable at will it would seem that there should be something of a contractual_nature existing between the licensor and the licensee."

See, also, 3 Dillon on Municipal Corporations (5 ed.), Section 1186, in the note to which we find:

"A city which has power by statute to remove nuisances, to prohibit and prevent encroachments on streets and sidewalks, and to regulate the erection of awnings, has no power to remove an awning over a sidewalk which is a safe structure and does not materially interfere with the free use and enjoyment of the sidewalk by the public: *Hisey* v. *Mexico,* 61 Mo. App. 248."

*Spencer* v. *Andrew,* 82 Iowa, 14 (47 N. W. 1007, 12 L. R. A. 115); *City Council* v. *Burum,* 93 Ga. 68 (19 S. E. 820, 26 L. R. A. 340). We learn in effect

from the case of *Dobbins* v. *Los Angeles,* 195 U. S. 223 (49 L. Ed. 169, 25 Sup. Ct. Rep. 118), that while every intendment is to be made in favor of the lawfulness of the exercise of municipal power making regulations to promote the public health, municipal by-laws and ordinances and every legislative enactment undertaking to regulate useful business enterprises are the subject of investigation by the courts with a view of determining whether the law, or ordinance, is a lawful exercise of the police power, or whether there has been an unwarranted and arbitrary interference with constitutional rights to use and enjoy property. The right to exercise the police power is a continuing one, and a business lawful today may in the future become a nuisance to the public welfare and be required to yield to the public good. If an ordinance lawful on its face and apparently fair in its terms is enforced in such a manner as to work a discrimination against persons for no lawful reason, such exercise of power will be invalidated by the courts. In that case a municipal ordinance was adopted in September fixing the limit in which gas-works might be erected. Thereafter a permit was granted for the erection of a plant. In November an amendatory ordinance was adopted by which the territory on which the works were in course of construction and purchased in reliance upon the September ordinance was excluded. There had been no change in the neighborhood or conditions. The ordinance was held to be void as an arbitrary and discriminatory exercise of the police power: See *Ex parte Wygant,* 39 Or. 429 (64 Pac. 867, 87 Am. St. Rep. 673, 54 L. R. A. 636); *Spaulding* v. *McNary,* 64 Or. 491 (130 Pac. 391, 1128).

In a note to the case of *Thomas Cusack Co.* v. *City of Chicago,* 267 Ill. 344 (108 N. E. 340, Ann. Cas. 1916C, 488, at p. 491), we find the general principle enunciated. The case and the note relate to billboards. It is there digested from the opinions that the recent cases support the rule that a municipality may, by virtue of its police power, enact and enforce reasonable regulations with reference to billboards and signs in order to preserve the health, safety, and good morals of its inhabitants, citing: *Haskell* v. *Howard,* 269 Ill. 550 (109 N. E. 992, L. R. A. 1916B, 893); *Southern Leasing Co.* v. *Ludwig,* 168 App. Div. 233 (153 N. Y. Supp. 545); *People* v. *Ludwig,* 172 App. Div. 71 (158 N. Y. Supp. 208); *Horton* v. *Old Colony Bill Posting Co.,* 36 R. I. 507 (Ann. Cas. 1916A, 911, 90 Atl. 822); *Cream City Bill Posting Co.* v. *Milwaukee,* 158 Wis. 86 (147 N. W. 25). In the latter case it is declared, among other things, that in order to support legislation of this kind a public need must exist and the act must at least have a tendency to support such need. The regulation of billboards, specifying the distance they should be placed from the sidewalk, was upheld upon the ground, *inter alia,* that they afforded a convenient hiding place for thieves and thugs.

A note in 3 McQuillin on Municipal Corporations, page 2245, reads:

"A license which has been acted upon cannot be revoked so as to deprive the licensee of the benefit of his expenditure. *Barre* v. *Perry & Scribner,* 82 Vt. 301, 309 (73 Atl. 574.)"

3. The sign in question in the present case having been erected pursuant to a permit issued by the municipal authorities was not illegal or a nuisance.

The question for consideration is whether or not the change required by the new ordinance prescribing the size and specifications for such a sign tended to promote the public health, safety, morals, or welfare. The new ordinance requires a few inches difference in the size of the sign, a slight difference in the height from the sidewalk, and a change in the style. It is shown by the testimony that the sign in question was securely hung. It has been inspected annually. It in no way caused inconvenience to the public and did not interfere with the personal or property rights of any person. It cannot be conceived that a sign in conformity with the new ordinance would tend to promote the health of the inhabitants of the city any more than the old one. The safety of the public is not claimed to be in any way impaired by the sign as now constructed, and the new arrangements would not tend toward safety. It cannot be claimed that the new requirement is in the interest of the morals or general welfare of the public. It is not shown and cannot be comprehended that there has been any material change in the conditions and surroundings of the sign since its erection. While the cost of the sign, $350, was not great, it having been installed pursuant to a regular law of the city, the rule adopted at the time of its erection became, in a sense, a rule of property, and without some reasonable cause for the condemnation of the structure it should not be held to be unlawful.

As far as appears, the ordinance may well apply to the future construction of signs without being materially affected by the sign in question in its present condition. The later ordinance is designed for a municipal benefit, and is reasonable and valid

as a regulation for the construction of signs after its enactment.

4. Every intendment should be made in favor of the validity of a municipal law, passed to promote the public welfare. Yet when it is shown that there is no reasonable basis for the adoption of the amendatory ordinance, and that the enforcement of the ordinance in the manner attempted in the present case would be in effect a deprivation of property unnecessarily and illegally, the court should so construe the enactment as to prevent a wrongful destruction of property. The ordinance should be upheld and enforced as far as it is reasonable, and not to the unreasonable encroachment of private rights of property. As to the sign in question which was already erected when the city law was enacted, and is in perfect condition, the ordinance is in the nature of an *ex post facto* law. It tends to impair the obligation of a contract.

The sign in question was not unlawful at the time it was erected. It has not been made so by any valid enactment of the legislative department of the city.

The judgment of the Circuit Court is reversed and the case dismissed.        REVERSED AND CASE DISMISSED.

BURNETT, C. J., and BROWN, J., concur.

JOHNS, J., dissents.

Rehearing denied January 10, 1922.

ON PETITION FOR REHEARING.

(203 Pac. 319.)

*Mr. Frank S. Grant,* City Attorney, and *Mr. E. Y. Lansing, Jr.,* Deputy City Attorney, for the petition.

*Mr. Wilbur Henderson, contra.*

In Banc.

A petition for rehearing has been interposed on behalf of the City of Portland. No new question is presented. Error in the former opinion is asserted.

On November 29, 1916, defendant, Paul Yates, procured from the City of Portland a permit to construct an electric sign at 125½ Sixth Street in the city. He constructed the sign under the provisions of Ordinance No. 30,332, at a cost of $350. The sign was inspected and accepted by the proper officers of the city. It is admitted that the sign is now securely hung and does not in any way interfere with the traffic on the street or sidewalk. It is in no way a menace or inconvenience to the public, and does not interfere with the personal or property rights of any citizen, but conforms to the provisions of the ordinance under which it was constructed. About July 3, 1918, the common council of the City of Portland enacted Ordinance No. 34,278 relating to the maintenance of electric signs in the city, so that the defendant's sign does not strictly conform to the requirements of the present ordinance. He obtained no permit under the later ordinance, and was convicted and fined for maintaining an electric sign in

violation of the new ordinance. In our former opinion we held in effect that Ordinance No. 34,278 was enforceable as to the future construction of electric signs in the city, but that the sign in question being in perfect condition, and not in any way a nuisance, the city could not at will require the same to be destroyed or require the defendant to remove it without some good reason.

We applied the principle that the City of Portland, by virtue of the authority of its charter and general powers, having under the provisions of a general ordinance, granted to defendant a permit, or license to erect an electric sign, and the defendant having accepted the same and constructed a sign pursuant to the permit, and in conformity to the ordinance at considerable expense, thereby creating a condition in the nature of a contractual relation between the city and the holder of the permit, could not revoke the permit at its mere will, or unless the sign was in some way an inconvenience or menace to the public by reason of changed conditions in the sign or its surroundings, so as to be a proper subject for the further exercise of the police power by the municipality.

As we understand the city's brief on the petition for a rehearing, this principle of law is condemned, and plaintiff contends that the will of the city legislators should control in the matter; and that the question of the reasonableness of the municipal law should not be investigated by the courts.

There is but little question as to what the law governing the matter is. The controversy arises in regard to the application of the principle which we have announced and to which we still adhere. The

learned city attorney refuses to be comforted, and fails to construe the former opinion as it was intended. That part of the former memorandum comprising a lengthy statement of the position of the city, taken from its brief, a portion of which was quoted, is in part magnanimously but erroneously credited to the court.

The contention of the city is to the effect that the municipal officers, in conformity to the general and charter powers conferred upon the city, may pursuant to a general ordinance duly adopted, in order to encourage the making of improvements in the city, grant permits authorizing the erection of electric signs over the sidewalks and the construction of vaults and rooms under the same, and many other minor privileges in the streets, none of which in any way interferes with the public use of the street or affects the safety of any person, or is obnoxious or objectionable; and after such permits are granted, the holders accept the same and erect structures costing thousands of dollars, all under the supervision and with the approval and acceptance of the proper city officials, a part or all of which are within the limits of the public streets; and then after a year or so has elapsed, and perchance there has been a change in a part or all of the city officials, the city government may, at its will, and for no good reason, by an ordinance changing the general regulations in minor particulars, condemn and make unlawful all of the structures so erected, require the electric signs to be removed, the vaults or rooms under the sidewalks adjacent to hotels, department stores, wholesale and retail store buildings and other buildings large and small to be torn out, and thereby despoil property

constructed at great expense pursuant to what are practically contracts between the city and the builders, or subject the builders of the permitted structures to prosecution for a *quasi* crime, for the infraction of the ordinance. The latter method was pursued in the present case. To say the least, the grant of such power or "discretion" to the municipal authorities would be dangerous. It is difficult to believe that the same is understandingly craved. It seems needless to say that the same principle would govern in regard to permits for the different privileges or structures referred to. The motive of the municipal officials is not questioned.

We will not repeat the contents of our former memorandum. In order to make it plain it may not be amiss to borrow the language of some of the text-writers and courts upon the subject:

In 3 Dillon, Mun. Corp. (5 ed.), Section 1178 et seq., that eminent author discusses the subject of vaults under sidewalks, areas, etc. Section 1178 contains this language:

"In many cities lot proprietors upon streets are permitted or not forbidden to make openings in the sidewalks, in order to obtain an entrance into the basement or cellar. It is also the usage that owners of buildings may make openings under the sidewalk or street to obtain additional cellar-room."

In *Gregsten* v. *Chicago,* 145 Ill. 451 (34 N. E. 426, 36 Am. St. Rep. 496), it was held that, quoting from the syllabus:

"It is the general doctrine that municipalities, under the power of exclusive control of their streets, may allow any use of them consistent with the public objects for which they may be held.

"A city under special legislative authority, as well as its general powers, may grant permits for and regulate the building of vaults under the streets, alleys and sidewalks, and require such compensation for the privilege as it may deem reasonable and just, when such permits relate solely to such use of the alleys, etc., as is in no wise inconsistent with their use by the public; and such permit, when accepted and acted on by the holder by making costly improvements required, will constitute a contract between the city and such holder, irrevocable at the mere will of the city."

In the case of *Everett* v. *Marquette,* 53 Mich. 450 (19 N. W. 140), the owner of a building obtained permission of the common council of Marquette village to make openings in the sidewalks for stairways to the basement. The stairways were constructed and used with proper railings for the protection of the public. Afterwards Marquette was incorporated as a city. In 1878 the common council directed the stairways to be removed as illegal and the openings to be closed. Chief Justice COOLEY in considering the case used this language:

"It is undoubted that the council had general control of the streets under the village charter; and it was a part of its duty to prevent the creation of any public nuisance within them. It is not to be assumed that consent would have been given to such a nuisance, and when, by formal resolution the counsel assumed to give permission to complainant to make the openings and build the stairways complained of, it must have been done in the belief that no public inconvenience would follow. If the permission was effectual for no other purpose, it at least rebutted any presumption which might otherwise have existed, that this partial appropriation of the street was *per se* a nuisance.

"If the permission was a mere license, and the subsequent action of the city council is to be regarded as a revocation of the license, it does not follow that the plaintiff has by the revocation immediately been converted into a wrongdoer. The question will then be whether the act of the complainant in maintaining his structure constitutes a public nuisance; and while the city council is entitled, under its supervisory control of the public streets, to consider and pass upon that question for the purpose of deciding upon the institution of legal proceedings for abatement, it cannot make itself the judge."

He then went on to say that such questions should be tried out in the regular courts, and concluded by saying:

"The city in this case was proceeding in an act of destruction on an assumption that the structures were already condemned as illegal. This was unwarranted, and it was quite right that the action should be restrained."

In *Mayor etc. of Baltimore* v. *Nirdlinger et al.,* and *Nirdlinger et al.* v. *Mayor etc. of Baltimore,* 131 Md. 600 (102 Atl. 1014), the Court of Appeals of Maryland considered permits issued by a municipal corporation for various "minor privileges" of the use of the street, such as bay-windows, show-windows, porches, signs and the like. Seven bills in equity were filed to enjoin the city officers from interfering with the "minor privileges" connected with, or related to, the buildings of the respective parties. We quote therefrom the kind language used by Chief Justice BOYD, as follows:

"It can make no difference to the public in the use of a street whether a vault, areaway, pole, sign, coalhole, marquee, or show-window is paid for or is free; for it is just as much an obstruction in the one case as in the other. Indeed, it might well be contended

that legislation authorizing a municipality to charge for such privileges to some extent recognizes the necessity for them, as it is not to be presumed that the legislature would grant the power exclusively as a revenue measure, and when they do materially obstruct the public they ought not to be granted, unless there is some real necessity for them. But when they are granted and paid for, or were granted at a time when no money value to the city for them was taken into consideration, but the authorities deemed it proper, possibly desirable, for the city to allow them, and the parties were induced to construct their buildings accordingly, instead of keeping back of the building line so they could keep them on their own ground, or to erect costly improvements, the successors in office of those who granted them ought not to be required, in the discharge of their duties as they understand them, to repudiate the action, or even inaction, with knowledge of what was being done, of their predecessors in office, if that must result in great injury or gross injustice to those who acted in good faith upon the grant, permission, or consent of those in power at the time, unless there is no other proper course for them to pursue."

Electrical signs beautify and illuminate the streets and the city. When constructed in strict conformity to the municipal law and with the approval of the constituted city authorities they ought not to be rendered illegal without any good reason. Their owners should not be penalized for maintaining them unless they become out of repair, or interfere to some extent with the use of the street, or are shown to be in some way objectionable. The record in this case shows the reverse.

5. The burden of showing facts which demonstrate that the later ordinance, as it affects defendant's sign is unreasonable was on the defendant. This burden

102 Or.—34

he has borne by showing the facts to which we have referred.

6. On the other hand, if the sign in question should become objectionable or unsafe, or under changed conditions should interfere with the use of the street or sidewalk, and it becomes necessary in the exercise of the police power to remove the same, the city would have authority to take proper proceedings to abate the nuisance or remove the obstruction. Stated differently, the public right in the street is paramount, and the abutter's right to proper use of the street in front of his property, is subject to reasonable municipal and police regulations: *Ivins* v. *Trenton,* 68 N. J. L. 501 (53 Atl. 202). The latter case and also *City of St. Louis* v. *St. Louis Theatre Co.,* 202 Mo. 690 (100 S. W. 627), are cited on behalf of the city. The principle enunciated in the last-named case, which we apply, is couched in the following language:

"If a municipality, by an express grant, authorizes an invasion of a public street, and such invasion does not seriously injure and infringe upon the public use thereof, then such municipality might not be allowed by subsequent ordinance to divest the party, who has acted upon this express grant, of the rights which have accrued by this contractual relation."

Other prominent cases cited by plaintiff are *District of Columbia* v. *R. P. Andrews Paper Co.,* and other like cases, 255 U. S. —— (66 L. Ed. ——, 41 Sup. Ct. Rep. 545). In these cases the District of Columbia granted permits to property owners under a general building ordinance permitting the construction of vaults under sidewalks. The acceptance reads in part thus:

"This permit is accepted with the understanding that the occupation of the vault space is permitted merely as an accommodation to the owner of the abutting premises, and that no right, title, or interest in the public is in any way abridged thereby, except as expressed in said permit and the conditions aforesaid."

Later Congress authorized the District of Columbia to assess and collect rent from all users of space occupied under the sidewalks and streets in the District of Columbia. The congressional act authorizing the collection of the rent was sustained. This means that under certain conditions a reasonable charge may be made under an act of Congress, for the use of space occupied in a street: See 28 Cyc. 888 (VI). These cases were entirely different from the one at bar. The plaintiff is not merely exacting rent from defendant.

It is said in plaintiff's brief on petition:

"However, the court states in its opinion, that the ordinance under consideration does not tend to promote public health, safety, morals or welfare; that it cannot be claimed that the requirements of the new ordinance are in the interest of the morals or general welfare of the public."

That is not the language of our former opinion. The misconception appears to be brought about by inserting the word "ordinance" where the court referred to the change required in the "sign." If the writer has not used plain language, it is to be hoped that the quotations of others will be understood.

The petition for rehearing is denied.

REHEARING DENIED.

Objection to costs sustained January 10, 1922.

## ON OBJECTIONS TO COSTS.

(203 Pac. 319.)

In Banc.

A motion to retax costs has been filed, and will be treated as objections to the costs in the case, as the motion contains such objections.

7. The action is brought for an alleged violation of city ordinances. There is no statutory or city law making the city liable to a judgment for the payment of costs where it fails in a prosecution for a violation of an ordinance. In the absence of such a law, no judgment can be rendered for costs in a criminal or *quasi*-criminal action when the defendant is acquitted: 11 Cyc. 278, par. 6; *Village of Sparta* v. *Boorom,* 129 Mich. 555 (89 N. W. 435, 90 N. W. 681); *Preston* v. *Koshkonong,* 55 Wis. 202 (12 N. W. 440). Prosecutions under penal ordinances are *quasi*-criminal actions: 19 R. C. L. 811; *Ex parte Howe,* 26 Or. 181 (37 Pac. 536).

The objections to costs are sustained. Defendant will not be allowed costs or disbursements.

OBJECTIONS TO COSTS SUSTAINED.