Argued July 18, affirmed September 23, reconsideration denied
October 30, petition for review denied December 10, 1974

## BROOKES, *Appellant, v.* TRI-COUNTY METRO-
## POLITAN TRANSPORTATION DISTRICT
## OF OREGON ("TRI-MET") ET AL (No. 394646),
## *Respondents.*

526 P2d 590

*Paul R. Meyer,* Portland, argued the cause for appellant. With him on the briefs were John Spencer Stewart and Kobin & Meyer, Portland.

*Ted E. Runstein,* Portland, argued the cause for respondent. With him on the brief were Kell, Alterman, Runstein & Thomas, and Clifford B. Alterman and Charles R. Williamson, Portland.

Before FORT, Presiding Judge, and THORNTON and HOLMAN, Judges.

FORT, P. J.

Plaintiff-bus driver sought declaratory and injunctive relief and damages for back pay against defendant, Tri-County Metropolitan Transportation District of Oregon, a municipal corporation, hereinafter called Tri-Met. A judgment was rendered against plaintiff in a non-jury trial on the merits.

Plaintiff was suspended for violating Tri-Met's appearance regulations.[1] The parties agree he was wearing a beard at that time in violation of that regulation.

The challenged regulation was issued to its employes on September 28, 1972. Those subject to it include employes in transportation, "operational employees" who "do business with the public only," and drivers, "instructors [and] supervisors."

---

[1] The personal appearance regulation provided:
    "To all employees:
    "Date—September 28, 1972

Edward Becker, Tri-Met's Assistant Superintendent of Transportation, testified that the appearance regulations were adopted to insure the presentability of its employes

"* * * so that, when people ride our bus, they feel that they are being serviced by a neat, capable operator."

Becker was of the opinion, based upon 38½ years experience in Tri-Met and its predecessor, that neatly groomed drivers improved bus ridership. He further stated that maintaining employe appearance was one element in a program to gain more riders. Jack Wood, Superintendent of Transportation, testified as follows:

"* * * [I]f an operator is not clean, neat in their personal appearance, something happens on the road, and mainly our passengers are above the

"Subject—Personal appearance of employees in transportation

"This will reiterate our long-standing policy of compliance to acceptable standards of personal appearance. Adherence to accepted business standards of neat and personal appearance is mandatory for all employees of this company, including contract employees and supervisory personnel.

"The following are guidelines for standards in personal appearance for employees of Tri-Met:

"1. Mustaches are acceptable if clipped and not below or outside the upper lip. Handlebar, waxed or twisted mustaches, beards and goatees are not acceptable.

"2. Hairstyle. Male employees' hair shall be kept neatly trimmed on the sides and in back, and shall extend downward on the back of the head no farther than one-half inch above the collar.

"3. Sideburns. Should not extend below the bottom of the ear and shall be of uniform width throughout their length. Shall be well trimmed so as to avoid the appearance of being bushy.

"The implementation and enforcement of this policy is the responsibility of each Tri-Met supervisor.

"SIGNED     Jack Wood
Superintendent of Transportation"

45-year bracket. This is more or less — they don't approve of the unruly beard or I shouldn't say beard, the unruly hair and appearance. And if an operator needs help like assistance in an accident some time for names people are resentful and shy away."

Becker, Wood, and one driver testified that they had heard customer complaints concerning driver appearances. Various drivers gave their opinions that driver appearance affected bus ridership.

Defendant introduced appearance regulations set by bus companies in other cities as well as an arbitration award between Greyhound and a union which set out appearance regulations. All three exhibits contained provisions similar to those contained in Tri-Met's appearance regulations.

One driver testified that he wore some hair below his lower lip for a short time without being warned to shave it. However, other drivers testified that Tri-Met enforced strictly the prohibition against beards. We note that plaintiff's appearance at trial violated the regulations pertaining to hair, mustache, sideburns, and beard, although his general appearance was presentable, as the trial court found.

Although there was some variance permitted from certain aspects of the grooming regulations, the prohibition relating to beards was strictly enforced because management concluded that it would be difficult to control the various styles of beards.

Plaintiff makes six assignments of error. The first two, asserting error in the lower court's failures to grant the requested relief, depend on the validity of his assertions in the remaining assignments. The latter

allege that the regulations, on their face and as applied to plaintiff, violated Oregon Constitution, Art I, §§ 8, 9, 12 and 33 and U. S. Const., amend. I, IV, V, IX and XIV; that the regulations violated Title VII of the Civil Rights Act, 42 USC § 2000e (1964), and that the trial court erred in admitting opinion evidence of various Tri-Met bus drivers.

## STATUTORY AUTHORITY

■ The legislature has accorded mass transit districts broad powers.

ORS 267.140 provides:

"A general manager of a district shall:

"(1) Have full charge of the acquisition, construction, maintenance and operation of the transit system of the district.

"(2) Have full charge of the administration of the business affairs of the district.

"(3) Enforce all ordinances adopted by the board.

"(4) Administer the personnel system adopted by the board and, except for officers appointed by the board, appoint, discipline or remove all officers and employes, subject to this chapter and the rules of the board.

"* * * * * *."

ORS 267.200 provides:

"* * * It shall have full power to carry out the objects of its formation and to that end may:

"* * * * *

"(10) Do such other acts or things as may be necessary or convenient for the proper exercise of the powers granted to a district by this chapter."

Based on the foregoing evidence, we conclude that a regulation relating to the effect upon ridership of the

appearance of employes having direct contact with the actual and potential riding public, is clearly related to the authorized purposes of the Tri-Met district under ORS 267.200 (10).

## REASONABLENESS OF REGULATION

■ Our inquiry, however, does not end with a determination that a personal appearance regulation is within the power granted Tri-Met by the legislature. An ordinance[20] also must be reasonable if it is enacted pursuant to a general grant of power. 56 Am Jur 2d 387, Municipal Corporations § 362. Reasonableness is required in such ordinances because

"* * * in every power given to a municipal corporation to pass bylaws or ordinances there is an implied restriction that the bylaws or ordinances will be reasonable, consistent with the general law and policy of the state, uniform in their operation, and promotive rather than destructive of lawful businesses and occupations." 5 McQuillin, Municipal Corporations 342, § 18.03 (3d ed rev 1969).

■■ The additional element of reasonableness is required only when the ordinance is enacted pursuant to a general grant of power made by statute or by charter. 5 McQuillin, supra, 337-38, § 18.02. *Ex parte Wygant,* 39 Or 429, 64 P 867, 87 Am St R 673, 54 LRA 636 (1901). A specific grant of power relieves an ordinance of a test of reasonableness prior to reaching constitutional issues. *Ex parte Wygant,* supra, at 433. What consti-

---

[20] Mass transit districts are considered municipal corporations. ORS 267.200. A mass transit district's legislative power is exercised by ordinance. ORS 267.150 (1). Admittedly, the regulation in issue is not denominated an ordinance. Limitations on a transit district's power is at issue, and we find no reason to distinguish between the restrictions imposed by such limitations on ordinances as opposed to regulations.

tutes a specific grant of power is somewhat uncertain.[3] We conclude that the authorization to do what is "necessary or convenient" is a general grant of power, and that the regulation must meet the reasonableness test.

██ An ordinance within the general power granted is presumed to be reasonable. *Haugen v. Gleason et al*, 226 Or 99, 105, 359 P2d 108 (1961); *Ex parte Wygant*, supra, at 434; 56 Am Jur 2d 420, Municipal Corporations § 382; 6 McQuillin, Municipal Corporations 14, § 20.06 (3d ed rev 1969). An ordinance ought not to be declared void for unreasonableness "unless the unreasonable features are so apparent as to be beyond question." *Spencer et al. v. City of Medford et al.*, 129 Or 333, 341, 276 P 1114 (1929). The party asserting that the ordinance is unreasonable has the burden of proof on that issue.[4] 6 McQuillin, supra, 20-21, § 20.08;

[3] In Ex parte Wygant, 39 Or 429, 64 P 867, 87 Am St R 673, 54 LRA 636 (1901), the court indicated that a specific grant of power was not made "* * * where the authority to legislate with respect to a given subject is conferred and the mode of its exercise is not prescribed * * *." The court, in Oregon Box Etc. Co. v. Jones Lumber Co., 117 Or 411, 416, 244 P 313 (1926), stated that a general grant of power could be considered specific if the mode of its exercise was indicated in the grant. *McQuillin* states that a given power is "express" if the manner of its exercise is specified in the grant or if the legislature ratified the ordinance passed pursuant to the power granted. 5 McQuillin, Municipal Corporations 338-39, § 18.03 (3d ed rev 1969).

[4] We note that we posed the issue in Neuhaus v. Federico, 12 Or App 314, 326, 505 P2d 939, Sup Ct *review denied* (1973), as "* * * whether any reasonable connection was established [by the evidence] between hair on males longer than permitted by the rule in question and the proper operation of the * * * [school]." Our concern that the school board introduce evidence on the subject was dictated by three factors not present in this case, i.e., (a) a less expansive statutory grant of power, (b) the impingement on the statutory right of children to attend school by the asserted power to suspend students for violation of the grooming regulations, and (c) the regulation's potential interference with parents' rights to direct their children's mode of dress and appearance.

*City of Portland v. Yates,* 102 Or 513, 529, 199 P 184, 203 P 319 (1921).

The applicable tests of reasonableness in a non-constitutional sense are broad. 5 McQuillin, supra, 340, § 18.03, in a succinct summary, states:

"* * * If such ordinances are found to be partial and unequal in their operation as between different classes; if they are manifestly unjust; if they disclose bad faith; if they involve such oppressive or gratuitous interference with the rights of those subject to them as can find no justification in the minds of reasonable men — the court may well say that it was never intended to give authority for such enactments or that they are unreasonable and ultra vires. * * *"

*See also:* 5 McQuillin, supra, 346-49, § 18.06.

Courts should be extremely careful in voiding an ordinance for being unreasonable in a non-constitutional sense. Normally, testing municipal ordinances and regulations against specific constitutional limitations would afford individuals adequate protection. Rationality tests, separate from those applied in constitutional adjudication, are either superfluous, if they are similar to the constitutional tests, or potentially disruptive of municipal government if they are more restrictive than the constitutional tests. *McQuillin* states that "reasonableness" is more widely applied against municipal ordinances than against statutes because

"* * * municipal ordinances are tested not only by the constitution but also by statutes, the common law and equity and the public policy of the state." 5 McQuillin, supra, 335, § 18.01.

Too rigorous testing of ordinances against "equity and the public policy" risks displacement of the judgment

of municipal corporations by the judgment of this court.

■ Defendant voluntarily assumed the burden of proof as to the reasonableness of the regulations in the trial court. We conclude, as did the trial court, that the evidence sustained that unnecessarily assumed burden. *City of Portland v. Yates,* supra. We have held the opinion of a police chief, with 37 years of experience as to the relationship between appearance regulations and police efficiency and morale, to be sufficient evidence of reasonableness. *Burback v. Goldschmidt,* 17 Or App 181, 521 P2d 5, Sup Ct *review denied* (1974). Assistant Superintendent Becker testified that, based on his 38½ years experience at Tri-Met and its predecessors, the appearance regulations improved ridership. Superintendent Wood, with 37 years experience, believed the appearance regulations elicited greater cooperation from passengers. We note that plaintiff failed to introduce evidence showing a lack of relationship between driver appearance and customer relations. This assignment is without merit.

## OPINION EVIDENCE

■ Plaintiff in his sixth assignment of error contends that the trial court erred in allowing Tri-Met to introduce opinion testimony of four Tri-Met bus drivers relating to the public's attitude concerning the neatness of drivers generally. We disagree. The witnesses were all experienced drivers of Tri-Met and claimed thereby to be well aware of the reaction and concern of members of the bus-riding public to driver appearance. We think its admissibility was within the discretion of the trial judge. *Ritter v. Beals et al,* 225 Or 504, 358 P2d 1080 (1961); *Naney v. Lane,* 247 Or

367, 428 P2d 722 (1967); *Cooney v. McGee,* 268 Or 521, 521 P2d 1051 (1974).

Furthermore, this case was, of course, tried to the court alone. In McCormick, Evidence 137, § 60 (hornbook series, 2d ed 1972), the author states:

> "* * * Nevertheless, the feeling of the inexpediency of these restrictions as applied to judges has caused courts to say that the same strictness will not be observed in applying the rules of evidence in judge-trials as in trials before a jury."

*See also: Lenahan v. Leach,* 245 Or 496, 500, 422 P2d 683 (1967).

## STATE CONSTITUTION CONTENTIONS

■ Plaintiff's fourth assignment of error contends that the appearance regulations, on their face and as applied, violate certain provisions in the state and federal constitutions. We shall first consider the challenged Oregon provisions.

Oregon Constitution, Art I, § 8, reads, in part:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever * * *."

Plaintiff, responding to a question as to why he wore a beard, testified:

> "I like the beard. I think it looks nice; my wife likes the beard; she thinks it looks nice. A number of my friends like it and in turn I think it looks nice. My father had a beard and my grandfather had a beard and I believe it to be an extension of my personality."

Plaintiff did not otherwise explain why he wanted to wear his hair, mustache, and sideburns in a style which also violated the regulations. We assume they

were worn for the same reasons stated for wearing the beard.

We note that an individual's mode of dress and grooming reflect his attitudes toward grooming standards. It is uncertain, however, whether the intimate relation between those grooming styles and the attitudes they reflect is such as to fall within the protections of Oregon Constitution, Art I, § 8. Conduct is not brought within those protections merely because it reflects particular attitudes. One may express his personality by walking the streets naked, but we may assume a municipal proscription of that act would not violate Art I, § 8. One may wish to express himself by making excessive noise on the public streets, but again, we may assume a municipal proscription thereof would not violate Art I, § 8.

The use of "opinion" in Art I, § 8, denotes an articulation of ideas concerning a given subject. "Opinion" is defined in Webster's New International Dictionary 1708 (2d ed 1952), as follows:

"* * * settled judgment in regard to any point; a notion or conviction founded on probable evidence; a belief; a view; a judgment; * * *."

The difficulty here is determining what constitutionally protected ideas, if any, plaintiff seeks to articulate by his grooming. Plaintiff does not claim that his grooming reflects any particular viewpoint. Rather, he describes his grooming amorphously as an "extension" of his personality.

We conclude that there is too tenuous a connection between plaintiff's grooming and one's expression of opinion to justify application of Art I, § 8 to Tri-Met's appearance regulations. We recognize that ad-

herence to these regulations will suppress plaintiff's application of his attitudes toward grooming. To hold personal grooming to be protected by Art I, § 8 would invalidate all appearance regulations promulgated by the state or local governments unless the respective governments could show a compelling need for the regulations. The latter would be a difficult burden to satisfy. While the wisdom of grooming regulations often may be open to considerable doubt, they do not affect the "expression of opinion" protected by Art I, § 8. Tri-Met's regulations, on their face and as applied to plaintiff, do not violate Oregon Constitution, Art I, § 8.

Oregon Constitution, Art I, § 9, prohibits unreasonable searches and seizures. Plaintiff affords us no reasons why Art I, § 9 is impinged by these regulations. We can find none.

Similarly, the regulations do not violate Oregon Constitution, Art I, §§ 12 and 33. Section 12, dealing with double jeopardy and self-incrimination, has no application to this case.

Oregon Constitution, Art I, § 33, reads as follows:
■ "This enumeration of rights, and privileges shall not be construed to impair or deny others retained by the people."
Plaintiff directs us to no "rights" or "privileges" to groom oneself as one wishes in public employment. We have been unable to discover such a right. We assume he feels there is a penumbra of privacy implicit in Art I, § 33, similar to that found in various amendments to the United States Constitution. *See, Griswold v. Connecticut,* 381 US 479, 85 S Ct 1678, 14 L Ed 2d 510 (1965); *Roe v. Wade,* 410 US 113, 93 S Ct 705,

35 L Ed 2d 147 (1973). We do not view the right of privacy in using contraceptives or submitting to abortions applicable to one's mode of grooming. The regulations, on their face and as applied to plaintiff, do not violate Art I, § 33.

In *State v. Fetterly,* 254 Or 47, 456 P2d 996 (1969), our Supreme Court considered an attack, based in part upon Oregon Constitution, Art I, § 33, upon the validity of the statute requiring motorcyclists to wear helmets.

In upholding the statute, the court said:

"* * * [T]he right to operate a motorcycle without protective headgear does not, in the scheme of things, loom very large when compared with any danger to the life and limb of others. We conclude that the legislature, in passing the questioned statute, has created no unconstitutional imbalance between the personal liberty of the individual and interest of the state." 254 Or at 50-51.

We conclude Oregon Constitution, Art I, § 33 is not violated. Accordingly, we find no violation of the Oregon constitutional provisions relied upon by plaintiff.

## UNITED STATES CONSTITUTION

Plaintiff also contends that the appearance regulations, on their face and as applied to him, violate the U. S. Const. amend. I, IV, V, IX and XIV. Plaintiff's choice of these amendments reflects the opinions of several federal courts of appeal which have held one's appearance, under certain circumstances, to be a right protected by one or more of the foregoing provisions of the constitution.[6]

---

[6] The Third Circuit found the right to govern one's hair length and style to be a right implicit in the "liberty" of the Fourteenth Amendment's due process clause. Stull v. School Board of Western Beaver Jr.-Sr. H.S., 459 F2d 339, 347 (3rd Cir

To determine whether Tri-Met's appearance regulations violate any of the specified amendments, we must first determine whether one's grooming is a constitutionally protected right. The United States Supreme Court has not decided that issue.[9]

Plaintiff contends initially that his appearance is a form of expression within the ambit of the Frst Amendment. We believe our discussion of plaintiff's claim, as to Oregon Constitution, Art I, § 8, is applicable to his First Amendment contention. The First Circuit has stated, in *Richards v. Thurston*, 424 F2d 1281, 1283 (1st Cir 1970), as follows:

"* * * [W]e reject the notion that plaintiff's

---

1972). *See*, Richards v. Thurston, 424 F2d 1281, 1285 (1st Cir 1970). A United States District Court's conclusion that a fireman's sideburn preference was constitutionally protected was supported only by citation to other cases. No attempt was made to identify the constitutional provision containing such a right. Lindquist v. City of Coral Gables, 323 F Supp 1161, 1163 (SD Fla 1971). The Seventh Circuit found that the right to wear one's hair at any length and in any style to be within, the penumbras of the First or Ninth Amendments. Breen v. Kahl, 419 F2d 1034, 1038 (7th Cir 1969), *cert denied* 398 US 937 (1970). The "penumbra" analysis gained its impetus from Justice Douglas' opinion in Griswold v. Connecticut, 381 US 479, 85 S Ct 1678, 14 L Ed 2d 510 (1965). Justice Douglas contended that the right to privacy was within the penumbra of the First, Third, Fourth, Fifth and Ninth Amendments. Griswold v. Connecticut, supra, at 484.

[9] In striking down a school's prohibition of black armbands, worn in protest of the Vietnam War, Tinker v. Des Moines Community School Dist., 393 US 503, 89 S Ct 733, 21 L Ed 2d 731 (1969), the court noted:

"The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment. * * * Our problem involves direct, primarily First Amendment rights akin to 'pure speech.'" 393 US at 507-08.

The court denied certiorari in a case in which the Ninth Circuit upheld student hair length regulations. Olff v. East Side Union High School District, 445 F2d 932 (9th Cir), *cert denied* 404 US 1042, 92 S Ct 703, 30 L Ed 2d 736 (1971).

hair length is of a sufficiently communicative character to warrant the full protection of the First Amendment. [Citations omitted.] That protection extends to a broad panoply of methods of expression, but as the non-verbal message becomes less distinct, the justification for the substantial protections of the First Amendment becomes more remote. * * *"

*See also: Massie v. Henry,* 455 F2d 779, 783 (4th Cir 1972); *Bishop v. Colaw,* 450 F2d 1069, 1074 (8th Cir 1971); *King v. Saddleback Junior College District,* 445 F2d 932, 937 (9th Cir), *cert denied* 404 US 979, 92 S Ct 342, 30 L Ed 2d 294 (1971). Accordingly, we decline to hold that plaintiff's grooming preferences were within the ambit of the First Amendment protection.

■ The basis for plaintiff's reliance on the Fourth, Fifth, Ninth and Fourteenth Amendments to challenge the constitutionality of these regulations is uncertain. We assume he contends that one's grooming preferences are within the penumbras of the amendments or somehow "implicit" in the Fourteenth Amendment. The Supreme Court has recognized certain constitutionally protected rights not specifically enumerated within the constitution itself—the right of parents to send their children to private schools, *Pierce v. Society of Sisters,* 268 US 510, 45 S Ct 571, 69 L Ed 1070, 39 ALR 468 (1925); the right of parents to have their children taught the German language, *Meyer v. Nebraska,* 262 US 390, 43 S Ct 625, 67 L Ed 1042 (1923); the right to interstate travel, *United States v. Guest,* 383 US 745, 86 S Ct 1170, 16 L Ed 2d 239 (1966); *Shapiro v. Thompson,* 394 US 618, 89 S Ct 1322, 22 L Ed 2d 600 (1969); the right of privacy, *Griswold v. Connecticut,* supra; and the right to determine whether to have an abortion, *Roe v. Wade,* supra.

We believe a court should not hasten to determine a right to be "fundamental" when it is not specifically mentioned in the constitutional text. Constitutional questions must be considered initially in the light of the specific constitutional text, the historical record, and U. S. Supreme Court decisions. We are not persuaded that one's "right" to govern his personal grooming in the context of facial hair styles, when related to the reasonable requirements of his employment, is so fundamental as to deserve the special protection accorded interstate travel, decisions on certain sexual matters, or a parent's preferences in the schooling of his children.

■ Tri-Met's appearance regulations do not escape judicial scrutiny entirely simply because a violation of a "fundamental" right has not occurred. Plaintiff makes reference in his brief to the due process clause of the Fourteenth Amendment. The regulations violate that clause if they do not constitute a rational means to a permissible end. Our inquiry, however, does not extend to making a value judgment concerning the wisdom of the regulations. The U. S. Supreme Court rejected its prior use of the substantive due process doctrine to invalidate state legislation. *Nebbia v. New York,* 291 US 502, 54 S Ct 505, 78 L Ed 940 (1934). That case involved a state economic regulation, but the court's statement is equally applicable to our review in this case, and states:

> "* * * With the wisdom of the policy adopted, with the adequacy or practicability of the law enacted to forward it, the courts are both incompetent and unauthorized to deal. * * *" 291 US at 537.

Accordingly, we express no opinion upon the need, wisdom or soundness of the challenged regulation.

Those are solely the responsibility of Tri-Met. We have pointed out that Tri-Met's superintendent and assistant superintendent testified that, in their opinion, the regulations were needed to elicit passenger cooperation and increased patronage. Given their total experience of some 74 years in public transportation, not to mention the absence of substantial evidence to the contrary, we cannot say that the challenged regulation does not constitute a rational means to a permissible end. Formal studies need not, and indeed often cannot, be made to substantiate the rationality of every legislative enactment. We find no violation of the due process clause.

In *Dwen v. Barry,* 483 F2d 1126 (2d Cir 1973), the court said:

> "We hold only that the choice of personal appearance is an ingredient of an individual's personal liberty, and that any restriction on that right must be justified by a legitimate state interest reasonably related to the regulation. * * *" 483 F2d at 1130.

We agree. In this case, however, it is clear that the defendant not only had a legitimate interest in but indeed a duty to maximize ridership by the general public upon its publicly-owned transportation system. The evidence supports the finding that the challenged grooming regulation is reasonably related to that end. In *Burback v. Goldschmidt,* supra, this court, in upholding a police department regulation relating to length of a policeman's hair, said:

> "* * * Those courts which have considered the constitutionality of police regulation of hair length have not dealt separately with the various asserted constitutional bases for such a right, but have consistently held that whatever right does exist may be limited upon a showing of public need

justified by a legitimate state interest. * * *"
17 Or App at 186-87.

In *Stradley v. Andersen,* 478 F2d 188 (8th Cir 1973),
the court said:

"We reject the idea that community standards
provide a legitimate basis in weighing constitutional
rights guaranteed to the individual. Whether public
acceptance or rejection of a particular hair style
exists in one community or another should not be
a standard of concern to a federal court. What must
be controlling to the court in evaluating competing
interests is whether the policy of the state espouses
a societal interest which outweighs the individual
concern. * * *" 478 F2d at 190.

We think concern by Tri-Met to improve its rider-
ship is such a societal interest and was clearly within
the intendment of the legislature in the enactment of
the legislation. ORS 267.010 - ORS 267.990.

■ The fifth assignment of error, that the trial
court erred in not holding the appearance regulations in
violation of Title VII of the Civil Rights Act, 42 USC
§ 2000e (1964) is without merit. Plaintiff failed to plead
such a violation in his complaint, nor argue it in his
trial brief. Thus it was not considered or properly pre-
sented there. We decline to consider it on appeal.
Isolated references on two occasions to possible in-
fractions of that Act did not satisfy plaintiff's respon-
sibility to plead its violation and properly present it
to the trial court.

We conclude that the challenged regulation is valid
as applied to plaintiff.

Affirmed.