Richard M. DAWSON

v.

J. G. MIZELL.

Civ. A. No. 528-70-R.

United States District Court,
E. D. Virginia,
Richmond Division.

March 24, 1971.

Angus H. Macauley, Patrick M. McSweeny, Richmond, Va., for plaintiff.

Rodney G. Sager, Asst. U. S. Atty., Richmond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

Jurisdiction of the Court is attained by virtue of Title 28 U.S.C.A. §§ 1331(a), 1339, and 1346(a) (2).

Plaintiff, a member of the Seventh Day Adventist Church whose tenets preclude labor on their Sabbath Day, which is from sundown Friday until sundown Saturday, is an employee of the United States Post Office Department in the capacity of a regular carrier.

Defendant, Mizell, is the Post Master of the Post Office in Richmond, Virginia, wherein plaintiff is employed.

From the pleadings, stipulations and evidence introduced before the Court, the Court finds that the plaintiff commenced his employment with the Post Office in June of 1966 as a temporary substitute carrier. Subsequently his employment was converted to a career appointment as a regular city carrier. The Post Office operates under an agreement between the United States Post Office Department and certain organizations of employees of the Post Office Department, which agreement calls for bidding for work assignments on the basis of seniority. As a practical result, when a vacancy in a position occurs, same is posted, mail carriers submit their applications for same, and award of the position is made on the basis of seniority.

At the time of plaintiff's initial employment, he was not a member of the

Seventh Day Adventist Church but became so on May 9, 1970, although he had for some time prior thereto been observing the tenets of the church. There is no doubt of the plaintiff's conscientious and sincere belief in the teachings of his church.

By reason of his lack of seniority, plaintiff now finds himself assigned to a position which requires that he work on Saturday. In an effort to maintain his position consistent with his religious beliefs, plaintiff instead of working on the Saturdays on which he was scheduled to work took those days off and they were charged against his accrued annual leave or charged as leave without pay.

On May 4, 1970, plaintiff was advised that he would be discharged from the postal service by reason of his excessive absences, to-wit: five Saturdays during the months of February, March and April of that year.

On October 2, 1970, a temporary restraining order was entered enjoining the defendant from removing the plaintiff from his position in the Post Office Department, Richmond, Virginia, for failure to perform work on Saturdays by reason of his religious convictions. This order was subsequently thereto elevated to a preliminary injunction pending the outcome of this litigation.

The Court finds that plaintiff attempted to secure relief through the local union, but was unsuccessful. Under the agreement between the Post Office and the unions, any deviation of same is a violation, except that the Post Master may make temporary assignments.

The defendant herein, in an effort to cooperate with the plaintiff, investigated and was advised that any temporary assignment of this plaintiff would be objected to by the union.

There are 1865 employees in the Post Office system in Richmond. Of these employees, 381 are regular letter carriers, of whom 304 are assigned to work on Saturdays. A little more than a third of the employees in the system work on Saturdays.

There is available to the plaintiff the opportunity to transfer from a regular carrier to a substitute carrier, which would render to him the same amount of money that he is now paid, but would result in the loss of certain of his seniority privileges, which the plaintiff is understandably reluctant to do.

The Court finds that the work of the Post Office requires that mail be processed on a seven day a week basis.

The Court finds that the seniority provisions of the agreement between the Post Office and the unions are some of its more valued aspects. The agreements under which the Post Office works affect approximately 700,000 employees throughout the United States.

The plaintiff seeks relief from the defendant's intention to discharge him by reason of his inability to work on Saturdays.

The Court finds that the assignment by defendant Mizell of the plaintiff to a position resulting in his having Saturdays off would be violative of the spirit as well as the substance of the agreement under which the Post Office employees work.

Plaintiff contends that defendant's contemplated removal of the plaintiff from the postal service by reason of his declining to work from sundown on Fridays until sundown on Saturdays would impose, under the circumstances of this case, a burden of the free exercise by plaintiff of his religion.

The Court concludes that there is no constitutional prohibition against the defendant insisting that plaintiff either agree to perform the duties assigned to him or suffer the consequences. This Court cannot agree with the suggestion of counsel that there would be little, if any, adverse effect on the federal interest in the operation of the Post Office Department and the delivery of the United States mail at Richmond, Virginia, resulting from the assignment of plaintiff to a six day work week with Saturday as a day off. True, the mere granting to plaintiff Saturdays off would not, in and

of itself, affect the operation of the Post Office; but the Court cannot overlook the fact that approximately 700,000 people are governed by the agreement which plaintiff suggest the defendant violate.

There can be no doubt from the evidence before this Court, indeed from the plaintiff's own testimony, that the seniority rights contained in the agreement are of the utmost importance to the employees.

■ The Court finds no infringement of plaintiff's rights concerning his religious beliefs. Religious discrimination should not be equated with failure to accommodate.

■ Since 1878 it has been recognized that the First Amendment cannot be interpreted as an absolute prohibition on the part of the government from interfering with the exercise of religion. The religious freedom guaranteed under our Constitution was that one could be assured that the legislature would make no law respecting the establishment of religion or prohibiting the free exercise thereof. See Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244 (1878). Since the *Reynolds* case it has been recognized that religious practices are subject to reasonable government interference under certain conditions and circumstances.

■ The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *." As a consequence, simply stated we have two religious clauses, one pertaining to "free exercise" and the other pertaining to the "establishment" of religion. The free exercise clause undoubtedly bars regulation of religious beliefs or interference with the dissemination of religious ideas. Its purpose is to prohibit misuse of secular governmental programs "to impede the observance of one or all religions or * * * to discriminate invidiously between religions * * * even though the burden may be characterized as being only indirect." Gillette v. United States, 401 U.S. ——, 91 S.Ct. 828, 28 L.Ed.2d 168, decided

March 8, 1971, quoting from Braunfeld v. Brown, 366 U.S. 599, 607, 81 S.Ct. 1144, 6 L.Ed.2d 563.

Undoubtedly any burden on First Amendment values must be justifiable in terms of a government's valid aims. Having concluded that in order to accommodate plaintiff's request to select his day off would require a violation on the part of defendant of a binding contract affecting 700,000 people, it is obvious that any incidental burden felt by the plaintiff is certainly justified when one considers that it would be literally impossible to accommodate the religious preference of every employee of the Post Office Department. As stated by Mr. Chief Justice Warren in *Braunfeld, supra,* ours is a cosmopolitan nation "made up of people of almost every conceivable religious preference. These denominations number almost three hundred. * * Consequently it cannot be expected, much less required, that legislators enact any law regulating conduct that may in some way result in an economic disadvantage to some religious sects and not to others because of the special practices of the various religions." In *Braunfeld, supra,* the court upheld the validity of a statute forbidding the retail sale on Sundays of certain commodities.

■ In addition, it should be noted that the central purpose of the establishment clause is to insure government neutrality in matters of religion. The rule of seniority as called for under the Post Office's agreement cannot, by any stretch of the imagination, be deemed to discriminate on the basis of religious affiliation or religious belief. All that the establishment clause requires is that when government activities touch on the religious sphere "they must be secular in purpose, evenhanded in operation, and neutral in primary impact." Gillette v. United States, *supra.*

Plaintiff contends that the Court is bound by the rule laid out in Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965. In that case appellant was a member of the Seventh Day Ad-

ventist Church who lost her position with a private employer by reason of her refusal to work on the Sabbath Day of her faith. Unable to obtain other employment because from conscientious scruples she would not take said work, she filed a claim for unemployment compensation benefits under the South Carolina Unemployment Compensation Act. That act provided that to be eligible for benefits, a claimant must be "able to work and * * * available to work," and further that a claimant is ineligible for benefits if he has failed, without good cause, to accept available suitable work when offered him by the employment office or the employer. The South Carolina administrators held the appellant to be ineligible for benefits. Appellant's argument before the respective courts was to the effect that the provisions of the South Carolina law abridged her right to the free exercise of her religion secured under the free exercise clause of the First Amendment through the Fourteenth Amendment. The United States Supreme Court, speaking through Mr. Justice Brennan, stated that for appellant's constitutional challenge to be withstood, it must rest either because her disqualification as a beneficiary represented no infringement by the state of her constitutional right of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by "compelling state interest in the regulation of a subject within the state's constitutional power to regulate. N.A.A.C.P. v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405;" See also, Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480.

It should be noted that in the *Sherbert* case it was pointed out that the law of South Carolina expressly saved the Sunday worshiper from having to make the kind of choice which was imposed upon the appellant in that case. Not so in our instant case. There is no evidence of any blanket permission to those who believe Sunday to be the Sabbath to be relieved from work. The holding in *Sherbert* was limited to a finding that a state "may not constitutionally apply the eligibility provisions so as to constrain a worker to abandon his religious convictions respecting the day of rest." That holding, paraphrasing the words of Justice Brennan, merely reaffirmed the principle to the effect that no state may exclude members of any faith, because of their faith, or lack of it, from receiving the benefits of public welfare legislation.

There is nothing in the instant case which suffers the plaintiff to be excluded from any rights because of his faith. The Court finds no action on the part of the Post Office Department which interferes with plaintiff's right to exercise his religion as he sees fit. The fact that no regular mail deliveries are scheduled on Sunday, the Court finds, is attributable to the fact that the business community dictates the workload. The Court does not find Sherbert v. Verner, *supra*, to be apropos in the instant case. In that case the individual was discriminated against in allowance of a public benefit, as distinguished from the instant case.

It is true that there is, to a certain extent, a burden imposed on the plaintiff Dawson in reference to the exercise of his religious belief, to the extent that as a result of the defendant not accommodating the Post Office work schedule to coincide with plaintiff's exercise of his religion, the instant unfortunate situation is created. But as heretofore stated, accommodation cannot be equated with discrimination. While the Court does not find that any burden imposed upon the plaintiff Dawson is constitutionally prohibited, even were the Court to find that the free exercise and establishment clauses were brought into play in the instant case, it can hardly be argued that there is not a compelling governmental interest in the Post Office entering into an agreement providing for seniority rights; for as a corollary to those rights the Post Office is assured of adequate personnel in the move-

ment of the mail. The burden on this agency of the government to accommodate its pattern of work to the special requirements of each individual's religion would result in a chaotic and impossible situation.

 Plaintiff's contention that the actions of the defendant are prohibited by the 1964 Civil Rights Act by virtue of Executive Order No. 11478, August 8, 1969, has no validity in the instant case.

As sympathetic as the Court may be with the plaintiff's predicament, the Court finds no violation on the part of the defendant of any constitutional right of the plaintiff, and the injunction heretofore entered must be dissolved.