Bernard F. McCaffrey, J.
The petitioner, a Nassau County policeman and the President of the Nassau County Policemen’s Benevolent Association, has brought this article 78 proceeding alleging that rule 22 of article VIII of the Rules and Regulations of the Nassau County Police Department is arbitrary and capricious. Rule 22 of article VIII of the Rules and Regulations of the Nassau County Police Department contains the grooming standards which must be followed by Nassau County policemen. The grooming standards set forth in rule 22 include such items as hair shall be neatly cut and trimmed at all times, sideburns shall not extend below the mid part of the ear, moustaches shall not extend over the top of the upper lip or beyond the corners of the mouth, and beards and goatees shall not be worn while on duty.
The petitioner claims that the afore-mentioned grooming standards are arbitrary, capricious, discriminatory, and deprive policemen of their right of freedom of choice of appearance. *633 It is the contention of the respondents that said grooming standards are reasonable and necessary to create a uniform appearance among police officers, and to insure that each officer has a professional appearance, which is essential to engendering public confidence.
While the petitioner’s lack of .standing on its face, or the fact that the controversy is not ripe for judication, or both, might be a basis for the dismissal of the proceeding, the court notes that the petitioner brings this proceeding in his individual capacity and as president of the Nassau County Policemen’s Benevolent Association and, though he does not allege that at present he is personally aggrieved, but merely states that he would like to maintain his personal appearance in such a way as not to be in conformity with rule 22 of the Bules and Regulations of the Nassau County Police Department, which rule states as follows:
“ Rule 22. Personal Appearance
“ Members of the Force and Department shall be neat and clean at all times while on duty. Male personnel shall comply with the following grooming standards unless excluded by their Commanding Officer due to special assignment:
1 ‘ Haircuts — Hair shall be neatly cut and trimmed at all times while on duty. Hair styles shall be conservative and not excessive in length.
“Sideburns — In no case shall sideburns extend to a point below % of an inch above the bottom of the ear lobe. (Amended by Teletype Order No. 114, April 23,1971.)
‘ ‘ Moustaches — A short and neatly trimmed moustache may be worn, but shall not extend over the top of the upper lip or beyond the corners of the mouth.
“ Beards
“ Goatees — Male personnel shall be clean shaven when reporting for duty. Beards or goatees shall not be worn while on duty. A growth of whiskers shall be permitted while on duty for medical reasons only when approved by the Chief Surgeon. ’ ’
It is well established that the Commissioner of Police is responsible for the discipline of his force. (People ex rel. Guiney v. Valentine, 274 N. Y. 331; Matter of Wiegmann v. Broderick, 27 AD 2d 734.)
However, it is clear that what is involved herein is not a question as to whether or not the actions of the Commissioner of Police are arbitrary, capricious and unreasonable, but rather the issue here is the constitutional validity of the Teletype Order No. 114 and the rule upon which it was based, which would have an effect not only upon the petitioner, but the entire police force. Therefore, although this has been initiated as a proceeding under *634 article 78 of the CPLR, the court, pursuant to its discretion and upon stipulation of both counsel, treats it as an action for a declaratory judgment (CPLR 103) for purposes of determining the constitutionality, the papers before it as a motion for a summary judgment. (CPLR 7804, subd. [b].)
What has started as a mild rash of eases involving challenges to dress codes shows signs of growing into epidemic proportions.
For instance it is noted that the grooming standards of the Nassau County Police Department were the subject of a prior article 78 proceeding in which Mr. Justice Levine in the Matter of Taxter v. Looney (Nassau County Sup. Ct., Index No. 13898-69) dismissed the petition and stated in part: “The limited restraint imposed by uniform grooming standards on certain individual members would appear to be entitled to less consideration than the overall benefit to be derived by the appearance of the department as a whole. Similar regulations have been imposed in other sections of the country. The court cannot hold that the respondent was arbitrary or that the constitutional rights of the petitioner were violated.”
Also, in another recent Nassau County Supreme Court case relating to grooming standards, Mr. Justice Meter in the Matter of Hunt v. Board of Fire Comrs. of Massapequa Fire Dist. (68 Misc 2d 261) rendered a decision holding that a regulation which unreasonably limits the fundamental personal right of appearance of a volunteer fireman is invalid. Justice Meter distinguished rules regulating a member’s sideburns and hair length of a volunteer fireman from that imposed upon members of the military, wherein the courts have stated their reluctance to interfere in military matters because they are 1 ‘ ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have ”. (Warren, The Bill of Rights and the Military, 37 N. Y. U. L. Rev. 181,187.) (Anderson v. Laird, 437 F. 2d 912, cert. den. 404 U. S. 865; Doyle v. Koelbl, 434 F. 2d 1014, cert. den. 402 U. S. 908; Gianatasio v. Whyte, 426 F. 2d 908, cert. den. 400 U. S. 941; Raderman v. Kaine, 411 F. 2d 1102, cert. dsmd. 396 U. S. 976; Konn v. Laird, 323 F, Supp. 1; Krill v. Bauer, 314 F. Supp. 965; see Smith v. Resor, 406 F. 2d 141; Byrne v. Resor, 412 F. 2d 774.)
Mr. Justice Meter further stated (p. 266): “ On analogy to the military cases and in light of the para-military nature of the police force, regulation of the length of hair and sideburns worn by policemen has been sustained (Dwen v. Barry, 336 F. Supp. 487 [Mishler, Ch. J., E. D. N. Y.]; Matter of Taxter v. Looney [Levine, J., Nassau County Sup. Ct., Index No, 13898/69], and *635 see People ex rel. Guiney v. Valentine, 274 N. Y. 331; People ex rel. Masterson v. French, 110 N. Y. 494; Matter of Wiegmann v. Broderick, 27 A D 2d 734).”
More recently Mr. Justice Derounian in Olszewski v. Council of Hempstead Fire Dept. (70 Misc 2d 603, 609) upheld a fire department’s dress code stating: “It is the judgment of this court, based on the record in this trial, that the defendants have demonstrated a paramount and compelling governmental and public interest sufficient to sustain the constitutional validity of the by-laws in question. ’ ’
The most recent determination made by a New York appellate court was that of Matter of Austin v. Howard (39 A D 2d 76) in which, by a divided court, sustained a finding against a city fireman who was found guilty of charges that he failed to comply with the dress rule of the fire department. The majority held that (p. 79): 1 ‘ Upon a consideration of the whole record as it reveals the attitude and conduct of the petitioner and the requirements of discipline and rule enforcement in a large quasi-military organization such as the Buffalo Fire Department, the determination of the Commissioner and the discipline imposed were entirely warranted and did not constitute an abuse of his discretionary powers.” The dissenting opinion in no way related to the question of constitutionality. It was mainly predicated upon that the required weight was not given to the arbitrator’s report, who was appointed pursuant to the terms of an employment agreement between the city and the Fire Fighters’ Association.
Since the time that Justice Oliver Wendell Holmes, speaking for the Supreme Judicial Court of Massachusetts, stated in 1892, though a policeman 11 may have a constitutional right to talk politics, but he has no constitutional right to be a policeman.” (McAuliffe v. Mayor & Bd. of Aldermen of New Bedford, 155 Mass. 216, 220), there has been a long overdue change in the position or in the determinations of the courts, so that in Garrity v. New Jersey (385 U. S. 493, 500), the Supreme Court stated:1 ‘ We conclude that policemen, like teachers and lawyers, are not relegated to a watered-down version of constitutional rights.” In that instance the court was dealing with a restriction upon the policeman’s right to assert the very important and otherwise commonly accepted fundamental privilege of “ self incrimination ”, and by a 5 to 4 vote the court declared the restriction to be. unconstitutional. Though one of the important functions of a policeman is to protect the constitutional rights of others, it is ironical that in the proper performance of his job certain rights must be, of necessity, qualified or *636 restrained. However, though the Supreme Court held that a policeman should have the same constitutional right to assert the privilege of self incrimination as a teacher or lawyer, it does not follow, and the court so holds herein, that á policeman does not have the same constitutional right as a teacher or lawyer to determine his own personal appearance while in uniform.
The court has made an extensive review of a number of cases relating to the constitutional right of a person to determine Ms own personal appearance and, though it appears to be clear that “ 1 the right to wear one’s hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution. ’ Breen v. Kahl, 419 F. 2d 1034,1036 (7 Cir. 1969) cert, denied, 398 U. S. 937, 90 S. Ct. 1836, 26 L. Ed. 2d 268 (June 2, 1970). Any regulation which limits this right must be 1 sufficiently justified ’ as furthering an ‘ important or substantial governmental interest ’, which ‘ is unrelated to the suppression of free expression ’ and any 1 incidental restriction on the alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. ’ United States v. O’Brien, 391 U. S. 367, 377, 88 S. Ct. 1673,1679, 20 L. Ed. 2d 672 (1968).” (Elko v. McCarey, 315 F. Supp. 886, 888 [1970]).
That upon an analysis of these cases the court notes that the overwhelming majority related to so-called high school student haircut cases and, though the court herein does not suggest that a policeman has less constitutional right than a student or any other citizen, it does suggest that the criteria to be applied in determining whether or not a policeman in uniform may determine Ms own personal appearance in violation of a grooming rule of the police department is not necessarily the same insofar as a high school student’s personal appearance in violation of a school grooming rule.
For, as was held by the court in Elko v. McCarey (supra, p. 888) : ‘1 While the burden of justification for such a regulation is ‘ substantial ’, there may be f different justifications ’ for the regulation of the hair styles of adults, such as firemen, than there are for students of a high school. Breen v. Kahl, supra, 419 F. 2d at 1036.”
An analysis of the haircut cases would seem to indicate that as the courts have repeatedly sustained the constitutional right of a high school student to wear Ms hair at such length as he so determines, just as the restrictive phraseology of Justice Holmes in McAuliffe has served as the basis over a number of years for restricting the rights of public employees, there now appears to be a situation developing wherein high school student haircut cases are being used as the precedent in public employees’ cases *637 to substantiate the proposition that rules and regulations promulgated in a school setting are applicable to those adopted in the public sector in which not only the individual, but the entire public has a vital interest and concern. So that now, some recent decisions hold that merely upon the assertion that a fundamental personal right of a public employee is involved, immediately the presumption of the constitutionality of a governmental rule is nullified. (Lindquist v. City of Coral Gables, 323 F. Supp. 1161.)
The court does not agree with that proposition. Prior to a presumption of constitutionality of a governmental rule or regulation being nullified, it must in the first instance be determined, not assumed, that the right of the public employee has not been qualified or waived by either the nature of the public employment or under the circumstances under which it is being exercised. Though the Fourteenth Amendment speaks of ‘ ‘ rights ’ ’ generally, it does not mean that there are not certain circumstances which would justify a distinction being made, or as the United States Supreme Court has held in Fuentes v. Shevin (407 U. S. 67), recently decided on June 12, 1972, involving the application of the Fourteenth Amendment to State statutes relating to the extraordinary remedy of replevin, and specifically concerning exceptional situations which would justify the seizure of a chattel without the need of giving notice or opportunity for a hearing. Though the court stated (p. 90): “ It is not the business of a court adjudicating due process rights to make its own critical evaluation of those choices and protect only the ones that, by its own lights, are 1 necessary ’ ”, it is of note that the court cited prior opinions relating to waiver aspects in which it was held: “ That the hearing required by due process is subject to waiver, and is not fixed in form does not affect its root requirement that an individual be given an opportunity for a hearing before he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. ’ ” (Matter of Ruffalo, 390 U. S. 544, 550-551; Boddie v. Connecticut, 401 U. S. 371, 378-379.) (Emphasis supplied.)
It is of further note that Mr. Justice White, in his dissenting opinion in discussing and determining whether or not a matter comports to the due process provisions of the Fourteenth Amendment, stated (p. 100): “ In considering whether this resolution of conflicting interests is unconstitutional, much depends on one’s perceptions of the practical considerations involved. ’ ’
The court notes herein that the evidence clearly establishes that the grooming rule is uniformly applied throughout the *638 police department and that there are no allegations by the petitioner that any members of the department have been penalized for failure to conform to the rule. However, the court does not believe that a policeman should have to purposely place himself in jeopardy in order to test the constitutionality of the rule. These matters of dress and grooming are best left to a determination or an agreement between the Police Commissioner and the members of the department, or their representatives, rather than to litigation. The court has consistently held that it will not ordinarily .substitute its judgment for that of an administrative body; however, it will do so where the administrative determination is arbitrary, capricious and unreasonable. The court notes that, in addition to an analysis of the latest cases, it also has reviewed numerous dress codes adopted by police departments throughout the country, including those which the Police Commissioner stated he took into consideration in promulgating the rule and teletype order of the Nassau County Police Department. However, particularly since the Police Commissioner indicates that the dress code is constantly under review for possible revisions, the court calls to his attention the Oakland Police Department Code which was adopted subsequent to the Nassau County Police Department rule, particularly in regard to the regulation which permits ‘ ‘ sideburns to extend to the bottom of the ear.”
Though the parties raise the issue of constitutionality, they do not specifically identify the amendments upon which they base their contentions. However, whether the test applied be that of Pickering v. Board of Educ. (391 U. S. 563) wherein the Due Process Clause as applied to the First Amendment was involved, or as applied to the Fourteenth Amendment in the Matter of Stanley v. State of Illinois (405 U. S. 645), which involved the Equal Protection Clause, the Nassau County Police Department dress rule involved herein is constitutionally valid. For as the Supreme Court stated in the Matter of Stanley v. State of Illinois (supra, pp. 650-651): “ In considering this procedure under the Due Process Clause, we recognize, as we have in other cases, that due process of law does not require a hearing 1 in every conceivable case of governmental impairment of private interest. ’ Cafeteria Workers v. McElroy, 367 U. S. 886, 894 (1961). That case explained that ‘ [tjthe very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation ’ and firmly established that ‘ what procedures due process may require under any given set of circumstances must begin with a determination of the pre *639 cise nature of the governmental function involved as well as of the private interest that has been affected by governmental action.’ Id., at, 895; Goldberg v. Kelly, 397 U. S. 254, 263 (1970).”
The private interest here, that of a policeman in uniform to determine his own personal appearance, is clearly offset by the “powerful countervailing interest” of the police department and the general public. The maintenance of a disciplined and efficient police department in which the policeman in uniform maintaining a standard of appearance that connotes public confidence, acceptance and respect, constitutes a ‘ ‘ powerful countervailing interest ’ ’.
In the case of Pickering v. Board of Educ. (supra, p. 568) the Supreme Court stated: ‘ ‘ the problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.”
Applying the test set down by the Supreme Court in Pickering (supra), and substituting therein the word “policeman” for ‘ ‘ teacher ’ ’, and with full consideration being given to the difference between the operation of schools and the operation of a police department, and the governmental body’s interest in a disciplined and efficient police department, and the direct concern and interest of the general public therein (see Brukiewa v. Police Comr. of Baltimore, 257 Md. 36), this court holds that being a policeman is that of a public employee with unique characteristics and his right to determine his own personal appearance may be limited, in that not only is it a concern of the police department in the maintenance of discipline, but it is a position in which his personal appearance while in uniform has a direct relationship to the public interest, concern and confidence as distinguished from the teacher in the Pickering case in which the Supreme Court held that his employment is only tangentially and insubstantially involved in the matter of the public statements made by the teacher so that the court concluded he should be regarded as no more than a member of the general public.
The court, therefore, in the papers presented herein determines that the petitioner has not demonstrated that a triable issue exists concerning the relationship of his determining his own personal appearance while in uniform to that of the public interest. Therefore, Louis J. Frank, Commissioner of Police of the County of Nassau, and the Police Department of the County of Nassau are entitled to summary judgment declaring the regulation in its present form valid.