**Larry STRADLEY, Appellant,**

v.

**Richard R. ANDERSEN, as Chief of the Division of Police, Department of Public Safety, City of Omaha, Nebraska, Appellee.**

**No. 72–1698.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1973.

Decided May 17, 1973.

Bennett G. Hornstein, Omaha, Neb., for appellant.

Kent Whinnery, Omaha, Neb., for appellee.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

LAY, Circuit Judge.

The Omaha Department of Public Safety, Division of Police, acting by and through its Police Chief, Richard R. Andersen, has promulgated a general order relating to standards of appearance and hair style for police officers. The plaintiff, Larry Stradley, an officer in good standing, brought this action under Section 1983 of Title 42 of the United States Code, alleging that his constitutional rights were violated by enforcement of the order. He alleges that he wears his hair and clothing neatly and in a well-groomed fashion with a portion of his hair extending slightly below his ears. He asserts that this does not restrict or hamper him in any way in the performance of his duties. He brought the suit as a class action for himself and other officers similarly situated. The district court, after trial on the merits, found that the regulation was reasonable and calculated to achieve legitimate state interests. Stradley v. Andersen, 349 F.Supp. 1120 (D.Neb.1972). We affirm.[1]

The regulation reads:

"This order pertains to Chapter I, Section 19, of the Rules and Regulations of the Police Division, 'Unprofessional actions, or conduct, while on duty or in uniform.'

"All personnel shall be alert, efficient, neat and business-like before the public.

"Hair appearance has become quite a problem as far as appearance before the public is concerned within the Omaha Police Division.

"Numerous comments, complaints, and criticism have been directed toward the Police Division based on outlandish types of hair styles. In order to reasonably conform with the general public, the following regulations shall be applicable, and shall be effective as of 1 June 1971, for all members of the Omaha Police Division.

"HAIR: Hair must be evenly tapered on sides and back. No hair will lap or curl over the ears or shirt collar. Hair style cannot interfere with the normal wearing of the uniform headgear. This means that the hat of the uniform, when properly worn, must be in the close proximity to both the ears and the eyebrows of the person wearing the hat in a standard appearing manner.

"SIDEBURNS: Maximum length of sideburns will be to the bottom level of the ear lobe. No flair (muttonchops). Sideburns must be evenly tapered, cut parallel to the ground and can be no wider than one inch.

"MUSTACHE: Mustaches must be neatly trimmed and tapered. Mustaches shall not extend beyond the corner of the mouth looking at a person directly to his face. No handlebar or Fu Manchu types of mustaches will be allowed.

"GOATEE OR BEARD: Beards and Goatees will not be allowed under any conditions. The face must be clean shaven for working purposes other than specified above.

"Exceptions to these rules shall only be allowed for officers who are working in the undercover type of activity within and for the Omaha Police Division. The special exemptions for this purpose shall be by request and directive of the Deputy Chief in charge of the Criminal Investigations Bureau."

---

* The Honorable Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

1. The district court's earlier opinion requiring exhaustion of state remedies before federal trial, 334 F.Supp. 72 (D.Neb. 1971), was reversed and remanded for a plenary trial, 456 F.2d 1063 (8 Cir. 1972).

In essence, Chief Andersen testified that the purposes of the regulation were (1) the maintenance of an efficient and disciplined police force and (2) the maintenance of public confidence.

The order is not attacked as being unreasonable. The basis of plaintiff's argument is that "[p]olicemen, like firemen, probation officers, teachers, other classes of public employees, public school students, and other persons have a federal constitutional right to choose their personal hair style and length." The argument is made that the defendant has failed to sustain its burden that such an order is necessary to enable police officers to carry out the mission of a city police department.

The plaintiff further contends that this court's opinion in Bishop v. Colaw, 450 F.2d 1069 (8th Cir. 1971), upholding the right of a school boy to wear whatever hair style he and his parents desired, is equally applicable to a police officer. We there found that the right involved, although not cognizable on a First Amendment ground, was based on the freedom to govern one's personal appearance and commanded protection under the Due Process Clause of the Fourteenth Amendment. However, we acknowledged that recognition of this right was not unconditional and required us to weigh the competing interests asserted. We found that the school authorities failed to demonstrate any necessity of the regulation of hair length and style.

Appealing contrasts are urged to justify individual styling—thus plaintiff pleads that the order will allow mustaches "such as that of Adolph Hitler, but not permit those modeled after Mark Twain, Dean Acheson or other prominent and respected persons." We cite these comparisons because we think the essential weakness of the argument lies in this contrast—plaintiffs are not serving in the role of dictators, authors or statesmen, but rather, they have undertaken responsible roles in a disciplined organization as public officers to enforce and maintain law and order in a given community. Herein lies the distinction between weighing the competing interests of a school board and a school student.

Traditionally, the policeman has been a highly trained officer who is entrusted with a responsible and oftentimes dangerous role as a public servant. His work habits on active duty require disciplined conduct, regimentation and frequent strict adherence to regulation and authorized detail. His job is often a delicate and difficult task to lawfully act against those who are sometimes unwilling to recognize any rules or ethics. It is essential that a policeman's training be such that he be taught to obey strict disciplinary procedure and rules in order to lend practical assurance that he will follow command and not abuse his awesome authority. As part of this discipline the police department has determined that an officer shall be neat in his appearance. There can be little argument that this requirement constitutes a legitimate departmental interest.

We reject the idea that community standards provide a legitimate basis in weighing constitutional rights guaranteed to the individual. Whether public acceptance or rejection of a particular hair style exists in one community or another should not be a standard of concern to a federal court. What must be controlling to the court in evaluating competing interests is whether the policy of the state espouses a societal interest which outweighs the individual concern. Thus, what is essential here is that the Public Safety Department stresses the need for public respect of its officers and that it feels such respect flows in part from the officers' individual appearance. If Chief Andersen misjudges, as plaintiff suggests, what necessary measures should be taken to achieve community respect, this basically must be the department's concern, not ours.

One may argue that how one wears his hair has little to do with whether an officer might effectively ap-

prehend criminals or otherwise fulfill his assigned mission as a policeman. This misses the mark. The critical factor is that police officialdom deems it necessary that the officer be well disciplined and that as part of that internal discipline, he be required to maintain a neat appearance. The degree of that appearance, as long as it is not arbitrary or unreasonable, should not be the court's concern.

Unlike the school cases, those officials who have spent their life in police work, who are trained in law enforcement discipline, possess far better empirical judgment of what is essential to achieve an efficient and disciplined police force than the officers themselves, the public or the predeliction of individual judges. If this results in a problem of low morale of police personnel, which plaintiff contends, this too is Chief Andersen's dilemma, not the courts'. This does not mean that the courts will ignore an arbitrary edict which might deprive a police officer of his sense of dignity or morality as a human being. But we are not dealing with arbitrariness—the only issue before us is the authority of a Public Safety Division of a municipality to set standards of neat appearance for its personnel balanced against the individual rights of a police officer to appear as he likes. In light of this competing and legitimate interest of the Public Safety Division, as weighed against the individual officer's personal likes or dislikes, we sustain the regulation. In accord Greenwald v. Frank, 70 Misc.2d 632, 334 N.Y. S.2d 680 (Sup.Ct.1972); Dwen v. Barry, 336 F.Supp. 487 (E.D.N.Y.1971);[2] cf. Doyle v. Koelbl, 434 F.2d 1014 (5 Cir. 1970), cert. denied, 402 U.S. 908, 91 S.Ct. 1380, 28 L.Ed.2d 649 (1971).

For the reasons herein stated, the judgment of the district court is affirmed.

---

2. Plaintiff urges that in the *Dwen* case the regulation applied only to uniformed officers. The present regulation encompasses all police department personnel with special exceptions allowed for those officers working in undercover activity.

The district judge in *Dwen* expressed a concern that if applied to all members of the police force it might fall within constitutional prohibitions. By our holding and for the reasons we have generally discussed, we disagree.