Argued March 26, affirmed April 15, petition for reconsideration
denied May 22, petition for review denied June 11, 1974

## BURBACK, *Appellant, v.* GOLDSCHMIDT ET AL (No. 389 791), *Respondents.*

521 P2d 5

*Phillip D. Chadsey,* American Civil Liberties Union of Oregon, Inc., Portland, argued the cause for appellant. With him on the briefs was John M.

Schweitzer, American Civil Liberties Union of Oregon, Inc., Portland.

*Thomas R. Williams,* Senior Deputy City Attorney, Portland, argued the cause for respondents. With him on the brief was John W. Osburn, City Attorney, Portland.

Before LANGTRY, Presiding Judge, and THORNTON and TANZER, Judges.

TANZER, J.

This suit was brought by a Portland police officer who was suspended from duty for failure to comply with Rule 2.108① of the Manual of Rules and Pro-

---

① "2.108 PERSONAL APPEARANCE. Male Uniform personnel shall be well groomed at all times and shall meet the following minimum standards:

"1. The face shall be kept clean shaven, except a moustache is permissible.
   "a. Moustache: A moustache, if worn, will be neatly trimmed. It will not extend beyond the mouth more than ¼ inch in width nor cover the upper lip. It will not extend below center of the mouth.

"2. Hair shall not touch the shirt collar nor extend over the ear. Hair shall be worn neatly and closely trimmed. It shall be clipped at the sides and back so as to present an evenly graduated appearance. Long or conspicuous sideburns are prohibited.
   "a. Sideburns: Sideburns will not extend below the lobe of the ear. They will be neatly trimmed and will not flare out at the bottom.

"3. No articles, such as pencils, pens, watch chains, fobs, pins, jewelry, cigarettes, pipes, or similar items shall be worn or carried exposed upon the uniform.

"Female uniform personnel shall be well groomed at all times and shall meet the following minimum standards:

"1. The hair shall be neatly shaped and arranged in an attractive, feminine style. Elaborate hair styles that do not allow

cedures of the Portland Police Bureau. Rule 2.108 defines the minimum standards for personal appearance of both male and female uniformed personnel and, under the rule, plaintiff was ordered to shorten his hair, mustache and sideburns. Plaintiff appeals from the trial court's decree which denied his prayer for an injunction against enforcement of the rule and ancillary relief.

Plaintiff contends that Rule 2.108 is invalid on two grounds. First, he contends that defendants lacked authority under the charter and code of the City of Portland to promulgate and enforce the rule. Second, he contends that the rule is an abridgement of his constitutional rights.

Plaintiff's first contention is incorrect. Chapter 2, Article I, Section 2-104 of the Charter of the City of Portland provides that the city council may delegate any of its non-legislative functions or powers to subordinate officers. Chapter 3.20.160 of the Portland City Code provides that the Chief of Police has authority to issue "such administrative rules and regulations * * * as are necessary to govern the conduct of the members of the bureau of police, and to provide for the adequate functioning of the bureau."

for the wearing of head gear such as helmets, gas masks, caps, etc. are prohibited. Hair may touch the collar but may not fall below the collar's lower edge. While in uniform, conspicuous barrettes, pins, and combs shall not be worn in the hair. If dyes, tints or bleaches are used on the hair, the artificial color must harmonize with the person's complexion tone and eye color. Wigs, if worn, must look natural and conform to all of the above listed regulations.

"Officers shall, as often as necessary, examine and clean their equipment and keep same always in good serviceable condition."

■ We held in *Neuhaus v. Federico,* 12 Or App 314, 505 P2d 939, *rev den* (1973), that a school could not regulate the hair length of its students because hair length is not related to the educational process and that regulation of hair length is therefore not within the statutory grant of authority to school officials. We upheld, however, a police regulation restricting supplemental employment of police personnel, even though it regulated their off-duty lives, because it was reasonably calculated to achieve legitimate police purposes such as projection of a desirable image of the police in the community, availability of personnel for 24-hour duty, and reduction of potential conflicts of interest. *Cox v. McNamara,* 8 Or App 242, 493 P2d 54, *rev den, cert den* 409 US 882 (1972). Drawing upon the principles of *Neuhaus* and *Cox,* we must decide in this case whether regulation of hair length of policemen is reasonably connected with the accomplishment of police purposes so as to be within the grant of authority to the chief of police and, on this record, we hold that it is.

The image which police personnel present to the general public is important to the accomplishment of the police mission. *See generally* ABA Project on Standards for Criminal Justice, The Urban Police Function, Part IX (1973). Equally important are considerations of police efficiency, self-confidence and discipline. Former Chief McNamara testified that, in his opinion, an officer's conformity to the grooming code contained in Rule 2.108 was an important factor in advancing those interests. For instance, the chief testified on the basis of over 35 years' experience in law enforcement that in his judgment an officer who conforms to the rule's standards is more confident,

more efficient, and presents a neutral and capable image to persons whom he serves.

The evidence shows that two factors figured prominently in Chief McNamara's decision to adopt Rule 2.108. One of these factors was public reaction to what he perceived as a relaxation or abandonment of police grooming standards. Chief McNamara testified that prior to formulating Rule 2.108, he had received complaints about the appearance of police personnel. Inspector Springer, who was responsible for carrying out the policies established by Chief McNamara, testified that he too had received some complaints.

The other factor was his recognition of the need for a uniform and enforceable policy. Prior to the adoption of Rule 2.108, the regulation pertaining to grooming provided only that hair should be "neat and clean" and that facial hair was prohibited. Chief McNamara and Inspector Springer testified that this broad standard led to confusion and considerable diversity in the appearance of police personnel: Some sergeants insisted that hair be cut very short, while others were indifferent. The new regulation was adopted in part to end such uncertainty as to the proper standard and to achieve a more uniform appearance for a uniformed force.

Plaintiff agrees that the projection of a neat and disciplined police image by all uniformed officers is a legitimate police purpose, but disagrees that these hair regulations are a wise or necessary means of accomplishing that end. He suggests that less stringent regulations would be more satisfactory to many police personnel, would allow them to better relate as police to young people, and would intrude less upon their private lives.

As there is room for disagreement as to the administrative wisdom of the regulations in question, there is also room for discretion. If uniformity of appearance itself has value to the effective functioning of a police force, then it is clearly for the police administration to select, for example, the color of the uniform even though the courts or the personnel may prefer another color. The process is one of administrative discretion with which the courts should not interfere so long as the police chief has chosen means which contribute to "the adequate functioning of the bureau."

■ Plaintiff's other basis of attack is that Rule 2.108 is unconstitutional under the First, Ninth and Fourteenth Amendments of the United States Constitution as an infringement on his right to present his personal appearance as he wishes.

Initially, we note that the constitutional status of the asserted right to wear one's hair as one wishes is far from settled. The United States Supreme Court has consistently denied certiorari in such cases,[2] and has thus allowed many diverse opinions of the circuits of the United States Court of Appeals and of state courts to stand.[3] Those courts which have considered

[2] E.g., *Olff v. East Side Union High School District*, 404 US 1042, 30 L Ed 2d 736, 92 S Ct 703 (1972).

[3] In addition to disparity of results, the courts which have recognized a constitutional right to style one's appearance in a public school setting are not uniform as to the source of that right. The right has been found in the First Amendment, *Arnold v. Carpenter*, 459 F2d 939 (7th Cir 1972); the Ninth Amendment, *Bishop v. Colaw*, 450 F2d 1069 (8th Cir 1971); the Equal Protection Clause of the Fourteenth Amendment, *Massie v. Henry*, 455 F2d 779 (4th Cir 1972), and the due process guarantees of the Fifth and Fourteenth Amendments, *Stull v. School Board of the Western Beaver Junior-Senior High School*, 459 F2d 339 (3rd Cir 1972); *Richards v. Thurston*, 424 F2d 1281 (1st Cir 1970).

the constitutionality of police regulation of hair length have not dealt separately with the various asserted constitutional bases for such a right, but have consistently held that whatever right does exist may be limited upon a showing of public need justified by a legitimate state interest. In *Stradley v. Andersen*, 478 F2d 188 (8th Cir 1973), for example, the Court of Appeals held that the police department's concern for public respect and discipline justified the department's restrictions upon an officer's right to determine the length of his hair. *See also Greenwald v. Frank*, 70 Misc 2d 632, 334 NYS2d 680 (1972), and *Akridge v. Barres*, 118 NJ Super 557, 289 A2d 270 (1972).[4] We have been directed to no decision on the merits reaching a contrary conclusion.[5]

In this case, plaintiff presented no evidence that he desired to wear his hair long as a means of expression and therefore no First Amendment issue is

---

[4] The decisions in *Greenwald* and *Akridge* were based in large part on the courts' views of police forces as quasi-military organizations. Analogies between police forces and military organizations have been frequently and articulately criticized as contrary to the goal of professionalization of the police. *See, e.g., Dwen v. Barry*, 483 F2d 1126 (2d Cir 1973); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Police, at 136 (1967). Therefore, while we acknowledge the decisions in those cases, we do not necessarily accept their characterization of the police. That would seem to be a decision of a political, not a judicial, nature.

[5] The case primarily relied upon by plaintiff for the contrary position, *Dwen v. Barry*, 483 F2d 1126 (2d Cir 1973), is in fact consistent with *Stradley*. In *Dwen*, the federal district court granted the police department's motion for a summary judgment even though the department had offered no evidence justifying the rule. The United States Court of Appeals for the Second Circuit reversed and remanded the case for a trial on the merits, pointing out that in order to justify its regulation, the department must establish a legitimate public interest reasonably related to the regulation.

presented. As to his other constitutional assertions, defendant's evidence that the regulation was a means reasonably calculated to accomplish legitimate governmental objectives is sufficient to overcome any privacy claim under the Ninth Amendment and it shows that the plaintiff is the subject of a reasonable classification which negates any claim of non-equal protection under the Fourteenth Amendment.

Defendant having demonstrated the authority to promulgate the rule and plaintiff not having shown that his rights were violated, the validity of the rule is sustained.

Affirmed.